## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

BODYGUARD PRODUCTIONS,
INC., ET AL.,

       Plaintiffs,

       v.

RCN TELECOM SERVICES OF
MASSACHUSETTS, LLC and RCN
TELECOM SERVICES, LLC,

       Defendants.

No.  3:21-cv-15310-FLW-TJB

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

Edward F. Behm, Jr.
ARMSTRONG TEASDALE LLP
Attorney I.D. No. 017972002
2005 Market Street
29th Floor, One Commerce Square
Philadelphia, PA 19103
(267) 780-2000
(215) 405-9070 (fax)
ebehm@atllp.com

*Attorney for Defendants RCN Telecom
Services of Massachusetts, LLC and
RCN Telecom Services, LLC
[additional counsel on signature
block]*

# <u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES .................................................................................. ii

I.      INTRODUCTION ...................................................................................1

II.     FACTUAL BACKGROUND ...................................................................2

        A.      Maverickeye UG ..........................................................................3

        B.      Senthil Segaran ............................................................................4

        C.      RCN's DMCA Policy and Program ............................................6

III.    LEGAL STANDARD ..............................................................................7

IV.     ARGUMENT ...........................................................................................7

        A.      Plaintiffs' claims for contributory and vicarious copyright infringement
                (counts I and II) should be dismissed because Plaintiffs fail to plausibly
                allege that any of RCN's subscribers directly infringed the copyrights. ................8

        B.      Plaintiffs' claim for contributory copyright infringement (count I) should
                be dismissed because Plaintiffs fail to plausibly allege that RCN materially
                contributed to or induced direct infringement. .......................................12

        C.      Plaintiffs' claim for vicarious copyright infringement (count II) should be
                dismissed because Plaintiffs fail to plausibly allege that RCN has a direct
                financial interest in the infringing activity. ...........................................16

        D.      Plaintiffs' claim for injunctive relief (count III) should be dismissed
                because injunctive relief is a remedy, not a cause of action. ................................19

V.      CONCLUSION......................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*After II Movie, LLC, et al. v. Grande Communications Networks, LLC*,
No. 1:21-cv-709 (W.D. Tex.) ...............................................................5

*After II Movie, LLC, et al. v. WideOpenWest Finance, LLC*,
No. 1:21-cv-1901 (D. Colo.)................................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................7, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................7

*Chruby v. Kowaleski*,
534 F. App'x 156 (3d Cir. 2013) .......................................................18

*Cobbler Nevada LLC v. Gonzales*,
901 F.3d 1142 (9th Cir. 2018) .............................................10, 11, 12

*Cobbler Nevada, LLC v. Gonzales*,
No. 3:15-cv-866, 2016 WL 3392368 (D. Or. June 8, 2016) ..............10

*Educ. Impact, Inc. v. Danielson*,
No. 14-937-FLW-LHG, 2015 WL 381332 (D.N.J. Jan. 28, 2015)....18

*Ellison v. Robertson*,
357 F.3d 1072 (9th Cir. 2004) .....................................................15, 16

*Fathers & Daughters Nev., LLC v. Zhang*,
No. 3:16-cv-1443, 2018 WL 3023089 (D. Or. June 18, 2018) ...........2

*Gordon v. Pearson Educ., Inc.*,
85 F. Supp. 3d 813 (E.D. Pa. 2015)..................................................15

*Indep. Project, Inc. v. Shore Point Plaza, LLC*,
No. 18-15048-FLW-ZNQ, 2020 WL 6363714 (D.N.J. Oct. 29,
2020) ...............................................................................................11

*Leonard v. Stemtech Int'l Inc*,
   834 F.3d 376 (3d Cir. 2016) ............................................................8, 12

*Luvdarts LLC v. AT&T Mobility, LLC*,
   No. 2:10-cv-05442, 2011 WL 997199 (C.D. Cal. Mar. 17, 2011) ....................14

*Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*,
   545 U.S. 913 (2005)...............................................................13, 14, 15

*Morse v. Lower Merion Sch. Dist.*,
   132 F.3d 902 (3d Cir. 1997) ....................................................7, 9, 18

*Parker v. Google, Inc.*,
   242 F. App'x 833 (3d Cir. 2007) ....................................................12, 15, 16, 17

*Parker v. Google, Inc.*,
   422 F. Supp. 2d 492 (E.D. Pa. 2006)........................................................16, 17

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) ........................................................15

*Phillips v. Cty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008) ................................................................7

*Tanksley v. Daniels*,
   259 F. Supp. 3d 271 (E.D. Pa. 2017), *aff'd*, 902 F.3d 165 (3d Cir.
   2018) ............................................................................14

*Venice PI, LLC v. O'Leary, et al.*,
   No. 17-cv-988-TSZ (W.D. Wash.) ........................................................2

## Statutes

17 U.S.C. § 512(a) & § 512(i)(1)(A) ........................................................6

17 U.S.C. §§ 512(j)(1)(A) and (B)........................................................18

## Other Authorities

Fed. R. Civ. P. 8(a)(2).............................................................................7

Federal Rule of Civil Procedure 12(b)(6) ........................................................1, 7, 8

Defendants RCN Telecom Services of Massachusetts, LLC and RCN

Telcom Services, LLC (collectively "RCN") move under Federal Rule of Civil

Procedure 12(b)(6) to dismiss Plaintiffs' Complaint.

## I.   INTRODUCTION

Plaintiffs Bodyguard Productions, Inc., *et al.*, purport to own the copyrights

to certain motion pictures, primarily direct-to-video movies such as "Mechanic:

Resurrection," "Extremely Wicked, Shockingly Vile and Evil," and "SKIN." *See*

Compl. (ECF No. 1) ¶¶ 9–25 & Ex. A to Compl. (ECF No. 2).  Defendant RCN is

an internet service provider headquartered in New Jersey.

Plaintiffs seek to hold RCN secondarily liable for alleged acts of direct

copyright infringement by subscribers of RCN's internet service.  Specifically,

Plaintiffs claim that RCN is liable because it did not terminate the internet access

of subscribers that Plaintiffs' agent, Maverickeye UG, accused of sharing

copyrighted content over the internet.

Plaintiffs and Maverickeye are part of a well-known web of copyright trolls.

*See generally* Ex. A (Feb. 23, 2018 Decl. of J. Christopher Lynch) (investigating

the relationships between certain Plaintiffs, Maverickeye, Maverickeye's alter egos

GuardaLey and Crystal Bay, and other copyright trolls).  Until now, Plaintiffs'

*modus operandi* has been to file John Doe lawsuits in the hope of securing quick

settlements and to dismiss them at the slightest resistance.  *See* Ex. B (Jan. 8, 2018

Order in *Venice PI, LLC v. O'Leary, et al.*, No. 2:17-cv-988-TSZ (W.D. Wash.)) at

2 & n.1 (collecting cases).  Plaintiffs are rarely successful in contested cases.  *See,*

*e.g.*, *Fathers & Daughters Nev., LLC v. Zhang*, No. 3:16-cv-1443, 2018 WL

3023089, at *4–5 (D. Or. June 18, 2018) (awarding attorneys' fees to accused

infringer where discovery revealed that the plaintiff, an affiliate of Plaintiffs here,

did not own the asserted copyright).  Additionally, courts and litigants in these

cases have persuasively accused Maverickeye of serious wrongdoing, such as

submitting fraudulent "expert" declarations from fictitious persons, violating state

law by engaging in unlicensed surveillance, and even conspiring with copyright

owners to offer copyrighted content over BitTorrent and then sue anyone who tries

to download it.  *See* Ex. B at 2–3 & n.2; Ex. C (June 13, 2014 Decl. of J.

Christopher Lynch) at 29.

Given this background, it is no surprise that Plaintiffs have failed to state

plausible secondary copyright infringement claims against RCN.

## II.      FACTUAL BACKGROUND

RCN is an ISP in the business of providing internet connectivity to

subscribers.  Compl. (ECF No. 1) ¶ 41.  RCN has about as much control over how

its customers use the internet as the power company: it controls access and nothing

more.

To this point, it is important to recognize what Plaintiffs do ***not*** allege. Plaintiffs do not allege that RCN hosts websites, stores data for customers, or distributes online content, software, or tools.  Plaintiffs do not allege that RCN monitors or controls the content that its subscribers access or which websites they visit, or that RCN otherwise plays any role in shaping how, when, or why they use the internet.  Plaintiffs do not allege that RCN has any ability to determine what files are stored on the computers and devices people use on its network, or whether there are any file-sharing programs running on those devices.

Nevertheless, Plaintiffs allege that RCN is secondarily liable for copyright infringement allegedly committed by its subscribers because RCN did not terminate their internet access after receiving emails accusing them of copyright infringement.  *See, e.g.*, *id.* ¶¶ 138, 145.

## A.   Maverickeye UG

According to Plaintiffs, they engaged Maverickeye, a third party based in Germany, to monitor BitTorrent activity for infringement of their copyrighted works.  *Id.* ¶ 83.  Plaintiffs allege that Maverickeye would then send "Notices of infringements"—emails—to RCN regarding instances of copyright infringement by RCN's subscribers.  *Id.* ¶ 96.

The example emails filed with Plaintiffs' Complaint as Exhibit D—like the other emails Plaintiffs intend to rely on—contain nothing more than conclusory

allegations of copyright infringement against an IP address.  *See, e.g.*, ECF No. 5 at

6 ("The unauthorized download and distribution of this file by your IP address

constitutes copyright infringement.").  The email does not discuss, reference, or

attach any supporting evidence.  Plaintiffs do not and cannot allege that RCN has

any ability to verify allegations like these.

In terms of what Maverickeye did to identify the alleged infringements,

Plaintiffs lard their Complaint with jargon to obscure the absence of facts.  For

example, Plaintiffs allege that Maverickeye "extracted the resulting data emanating

from the investigation, reviewed the evidence logs, and isolated the transactions

and the IP addresses associated therewith for the files identified by the SHA-1 hash

value of the Unique Hash Number."  Compl. ¶ 85.  But Plaintiffs allege no facts

regarding how Maverickeye detected actual instances of direct copyright

infringement, or what forensic record of direct copyright infringement

Maverickeye obtained or preserved.  *See, e.g.*, *id.* ¶¶ 83–89.  In substance,

Plaintiffs allege little more than "Maverickeye detected infringement."  *See id*.

### B.    Senthil Segaran

According to Plaintiffs, Senthil Segaran, a resident of the United Kingdom

or India, operates (or operated) the torrent website "YTS."  *See* Compl. ¶¶ 90–91;

Ex. C to Compl. (ECF No. 4) at 4.  In support of their Complaint, Plaintiffs attach a

"Certificate of Authenticity" ostensibly signed by Mr. Segaran over a year ago, in

which he purports to attest to the authenticity of unspecified records "attached hereto."  ECF No. 4 at 4.  Assuming the date is accurate and the signature is authentic, Segaran executed the certificate not long after entering into *pro se* consent judgments with certain Plaintiffs and their affiliates, to resolve their copyright infringement lawsuits against him.[1]  It is concerning that Plaintiffs appear to have submitted this very same Certificate of Authenticity, ***regarding the alleged authenticity of different documents***, in support of other recent copyright infringement complaints.  ECF No. 25-2, *After II Movie, LLC, et al. v. WideOpenWest Fin., LLC*, No. 1:21-cv-1901 (D. Colo.); ECF No. 1-2, *After II Movie, LLC, et al. v. Grande Commc'ns Networks, LLC*, No. 1:21-cv-709 (W.D. Tex.).

Plaintiffs contend that the records submitted with Segaran's certificate are "records of activity of registered user accounts" on the YTS website.  Compl. ¶ 90. RCN is unaware of any credible record of website activity that looks like this:

---

[1] ECF No. 25, *Wicked Nevada, LLC v. John Doe, et al.,* No. 1:19-cv-413 (D. Haw.); ECF No. 77, *Venice PI, LLC, et al. v. Doe 1, et al.,* No. 1:19-cv-169 (D. Haw.).



ECF No. 4 at 2–3.  Despite the heavy redactions in Exhibit C, Plaintiffs did not

attempt to file an unredacted copy under seal and have not otherwise provided an

unredacted copy to RCN or its counsel.

### C.    RCN's DMCA Policy and Program

For the entire period relevant to this case, RCN has had in place a safe

harbor policy pursuant to the Digital Millennium Copyright Act ("DMCA"), under

which RCN terminates the accounts of accused copyright infringers in appropriate

circumstances.  *See* 17 U.S.C. § 512(a) & § 512(i)(1)(A).  Plaintiffs' allegations to

the contrary (*e.g.*, Compl. ¶ 119) are demonstrably false.  RCN has a robust

program under which it notifies account holders of infringement allegations and

ultimately permanently terminates the account upon receipt of additional

complaints.

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a

complaint "for failure to state a claim upon which relief can be granted."  To

survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that

raise a right to relief above the speculative level.  *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).  This requires "more than an

unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  Although a court

must accept all factual allegations in the plaintiff's complaint as true and view

them in the light most favorable to the plaintiff, *Phillips v. Cty. of Allegheny,* 515

F.3d 224, 231 (3d Cir. 2008), a court is not required to accept a complaint's "bald

assertions" or "legal conclusions."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d

902, 906 (3d Cir. 1997); *see also Iqbal*, 556 U.S. at 678 (noting that "naked

assertion[s]" devoid of "further factual enhancement" are insufficient to state a

plausible claim).

## IV.   ARGUMENT

Plaintiffs do not accuse RCN of directly infringing their copyrights.  Instead,

they accuse RCN of two types of secondary copyright infringement—contributory

and vicarious—based on the allegedly infringing activities of RCN's subscribers. Compl. ¶¶ 136–47.  But Plaintiffs do not plausibly allege that RCN's subscribers directly infringed their copyrights, and their allegations regarding other elements of contributory and vicarious infringement are also deficient.  Additionally, Plaintiffs include a count for injunctive relief, which is a remedy, not a cause of action.  For these reasons, all three counts in Plaintiffs' Complaint should be dismissed under Rule 12(b)(6).

### A.   Plaintiffs' claims for contributory and vicarious copyright infringement (counts I and II) should be dismissed because Plaintiffs fail to plausibly allege that any of RCN's subscribers directly infringed the copyrights.

"Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party."  *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001)).  "Thus, to prove a claim of contributory or vicarious infringement, a plaintiff must first show direct infringement by a third party."  *Id.*

Here, Plaintiffs' claims are expressly premised on the notion that RCN is secondarily liable for acts of direct copyright infringement by RCN's subscribers. Compl. ¶¶ 139 ("Defendants are liable as contributory copyright infringers for the infringing acts of their subscribers."), 143 ("Defendants are vicariously liable for the infringing acts of their subscribers' infringements . . . .").  But Plaintiffs

identify the alleged direct infringers by IP address only; there are no additional allegations demonstrating that the allegedly infringing activity at that IP address was performed by an RCN subscriber.

At most, the Complaint alleges that RCN provides IP addresses to its subscribers, and that *someone* using those IP addresses uploaded and downloaded infringing content. But beyond that, there are no pleaded facts in Plaintiffs' Complaint showing that the alleged infringers are actually RCN subscribers— except Plaintiffs' say-so. *Compare* Compl. ¶ 74 (alleging that "an individual using email address j65*****@gmail.com" downloaded an infringing file using IP address 207.237.11.70) *with id.* ¶ 73 (concluding, with no other pleaded facts, that the individual using email address j65*****@gmail.com is an RCN subscriber); *see also, e.g.*, *id.* ¶¶ 93-95 (attributing allegedly infringing activity to "*Defendants' subscriber at* IP address…" with no facts linking the subscriber to the IP address). In other words, Plaintiffs try to connect the dots between an IP address and an RCN subscriber though only "bald assertions" and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," both of which are insufficient to plausibly state a claim for either contributory copyright infringement (count I) or vicarious copyright infringement (count II). *See Iqbal*, 556 U.S. at 678; *Morse*, 132 F.3d at 906.

Other courts have dismissed similarly deficient copyright infringement claims on this basis.  For example, in *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018), the Ninth Circuit Court of Appeals affirmed the district court's finding that plaintiff had not plausibly stated a claim for direct infringement based solely on the plaintiff's failure to link the IP address to the defendant.  The court explained:

> Although copyright owners can often trace infringement of copyrighted material to an IP address, it is not always easy to pinpoint the particular individual or device engaged in the infringement.  Internet providers, such as Comcast or AT&T, can go so far as to identify the individual who is registered to a particular IP address (i.e., an account holder) and the physical address associated with the account, but that connection does not mean that the internet subscriber is also the infringer.  The reasons are obvious—simply establishing an account does not mean the subscriber is even accessing the internet, and multiple devices can access the internet under the same IP address.

*Id.* at 1146–47.  Thus, the *Cobbler* court concluded that the district court properly dismissed the copyright infringement claims because the plaintiff had not alleged facts that were "above a speculative level."  *Id.* at 1147.  "Because multiple devices and individuals may be able to connect via an IP address, simply identifying the IP subscriber solves only part of the puzzle.  A plaintiff must allege something more to create a reasonable inference that a subscriber is also an infringer."  *Id.* at 1145; *see also Cobbler Nevada, LLC v. Gonzales*, No. 3:15-cv-866, 2016 WL 3392368,

at \*1, \*3 (D. Or. June 8, 2016) ("While it is *possible* that the subscriber is also the person who downloaded the movie, it is also possible that a family member, a resident of the household, or an unknown person engaged in the infringing conduct.") (emphasis in original).

So too here.  Like in *Cobbler*, Plaintiffs have failed to allege "something more" beyond identifying an IP address to create a reasonable inference that a particular RCN subscriber is also the alleged direct infringer.  And without a reasonable inference that an RCN subscriber directly infringed Plaintiffs' copyrights, Plaintiffs' secondary copyright infringement claims against RCN cannot survive a motion to dismiss.

Indeed, district courts—including courts in this district—have cited *Cobbler* in denying motions for default judgment on copyright infringement claims, which similarly require courts to evaluate the pleaded claim's sufficiency.[2]  For example, in *Malibu Media v. Park*, Judge Vazquez denied the plaintiff's motion for default judgment and held that the plaintiff "will have to show something more than merely tying [d]efendant to an IP address in order to sufficiently establish copyright infringement."  No. 2:17-cv-12107-JMV-MF, 2019 WL 2960146, at \*6

---

[2] In ruling on a motion for default judgment, a court must "ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'"  *See Indep. Project, Inc. v. Shore Point Plaza, LLC*, No. 18-15048-FLW-ZNQ, 2020 WL 6363714, at \*2 n.3 (D.N.J. Oct. 29, 2020).

(D.N.J. July 9, 2019).  Likewise, in *Malibu Media, LLC v. Peled*, Judge Hayden found "Judge Vazquez's reasoning [in *Park*] very persuasive" and agreed that a plaintiff's mere identification of an internet subscriber linked to an allegedly infringing IP address is insufficient to state a claim for copyright infringement. No. 2:18-cv-141-KSH-CLW, 2020 WL 831072, at *5–6 (D.N.J. Feb. 20, 2020). Here, because Plaintiffs have similarly failed to link any of RCN's subscribers to the allegedly infringing IP addresses, Plaintiffs' Complaint fails to state a copyright infringement claim.

### B. Plaintiffs' claim for contributory copyright infringement (count I) should be dismissed because Plaintiffs fail to plausibly allege that RCN materially contributed to or induced direct infringement.

To state a claim for contributory copyright infringement, a plaintiff must plausibly allege that: (1) a third party directly infringed the plaintiff's copyright; (2) the defendant knew that the third party was directly infringing; and (3) the defendant materially contributed to or induced the infringement.  *See Leonard*, 834 F.3d at 387; *see also Parker v. Google, Inc.*, 242 F. App'x 833, 837 (3d Cir. 2007).

For the reasons set forth in section IV.A above, Plaintiffs have failed to plausibly identify any RCN subscriber as a direct infringer—a necessary component of contributory copyright infringement.  Further, nothing in Plaintiffs' Complaint plausibly alleges that RCN materially contributed to or induced direct infringement, by an RCN subscriber or otherwise.

The Supreme Court addressed this element of the contributory copyright infringement test most recently in *Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*, 545 U.S. 913 (2005).  In *Grokster*, the Supreme Court held that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other *affirmative steps* taken to foster infringement, is liable for the resulting acts of infringement by third parties."  *Id.* at 918 (emphasis added).  But the *Grokster* court cautioned that "mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability," "[n]or would ordinary acts incident to product distribution, such as offering customers technical support or product updates, support liability in themselves."  *Id.* at 937.  "[I]n the absence of other evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement, if the device otherwise was capable of substantial noninfringing uses."  *Id.* at 939 n.12.

Here, at best, Plaintiffs' Complaint includes only two allegations of RCN's "affirmative steps" that allegedly encouraged or induced infringement: (1) RCN advertised fast internet speeds, *see* Compl. ¶¶ 131–133, 146; and (2) RCN failed to terminate the accounts of alleged "repeat subscribers" or otherwise prevent them from accessing RCN's network, *see* Compl. ¶¶ 114, 145.  But neither of these

alleged acts—accepted as true on a motion to dismiss and construed in Plaintiffs' favor—plausibly states a claim for contributory copyright infringement.

First, an ISP advertising its internet speed is precisely the kind of "ordinary act[] incident to product distribution" that the *Grokster* court specifically excluded from supporting liability. *See Grokster*, 545 U.S. at 937; *see also see also Luvdarts LLC v. AT&T Mobility, LLC*, No. 2:10-cv-05442, 2011 WL 997199, at *2 (C.D. Cal. Mar. 17, 2011) (plaintiffs failed to state a secondary copyright infringement claim against wireless carriers because, among other reasons, they did not allege "that Defendants undertook 'any substantial promotional or advertising efforts to encourage infringing activity'") (cleaned up).

Second, failing to terminate a subscriber's internet account is not an "affirmative step" at all. *See Grokster*, 545 U.S. at 919. Rather, Plaintiffs' claim that RCN failed to terminate subscribers' internet accounts is a claim "merely based on a failure to take affirmative steps to prevent infringement," which the *Grokster* specifically noted could not support a finding of contributory liability. *Id.* at 939 n.12; *see also id.* at 937 (a defendant's "mere knowledge of infringing potential or of actual infringing uses" cannot support a finding of contributory liability). In other words, Plaintiffs' allegations suggest only that RCN provided the means for infringement to occur, which is not enough to state a claim for contributory copyright infringement. *See, e.g.*, *Tanksley v. Daniels*, 259 F. Supp.

3d 271, 296 (E.D. Pa. 2017) (dismissing contributory infringement claim because plaintiff alleged only that defendant provided a forum that led to infringement), *aff'd*, 902 F.3d 165 (3d Cir. 2018); *see also Gordon v. Pearson Educ., Inc.*, 85 F. Supp. 3d 813, 822 (E.D. Pa. 2015) (recognizing that "merely supplying the means to accomplish infringing activity is not enough" to state a claim for contributory copyright infringement).

Finally, even if Plaintiffs had adequately alleged that RCN contributed to infringement, Plaintiffs still have not stated a claim because RCN's internet service is capable of "'substantial' or 'commercially significant' noninfringing uses." *Grokster,* 545 U.S. at 942 (Ginsburg, J., concurring). The sale or distribution of a product used for direct copyright infringement "does not constitute contributory infringement if the product is widely used for legitimate, unobjectionable purposes. Indeed, it need merely be capable of substantial noninfringing uses." *Sony Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 442 (1984); *see also Smith v. BarnesandNoble.com*, LLC, 143 F. Supp. 3d 115, 124 (S.D.N.Y. 2015) ("The [*Sony*] rule requires a court to determine whether a product or service is *capable* of substantial non-infringing uses, not whether it is currently used in a non-infringing manner.") (emphasis in original), *aff'd on other grounds*, 839 F.3d 163 (2d Cir. 2016). Plaintiffs cannot dispute that RCN's internet service is capable of substantial noninfringing uses, and they do not allege otherwise. *See, e.g.*,

*Cobbler*, 901 F.3d at 1149 ("Providing internet access can hardly be said to be distributing a product or service that is not capable of substantial or commercially significant noninfringing uses.") (cleaned up).  Accordingly, RCN cannot be secondarily liable for its subscribers' alleged infringements as a matter of law.

### C.     Plaintiffs' claim for vicarious copyright infringement (count II) should be dismissed because Plaintiffs fail to plausibly allege that RCN has a direct financial interest in the infringing activity.

To state a claim for vicarious copyright infringement, a plaintiff must plausibly allege that a defendant: (1) has a direct financial interest in the infringing activity; and (2) has the right and ability to supervise the activity which causes the infringement.  *See Grokster*, 545 U.S. at 930; *Parker*, 242 F. App'x at 837.

With regard to the "direct financial interest" element, Plaintiffs must allege more than the mere receipt of "flat periodic payments for service."  *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007).  Instead, courts require a claimant to establish that the service provider "attracted or retained subscriptions because of the infringement or lost subscriptions because of [the] eventual obstruction of the infringement."  *Ellison*, 357 F.3d at 1079.  The relevant inquiry "is whether the infringing activity constitutes a draw for subscribers, not just an added benefit." *Id.*; *see also Parker*, 242 F. App'x at 837 (approvingly citing *Ellison* standard).

Plaintiffs' allegations do not meet this standard.  The only financial benefit that Plaintiffs allege is the receipt of flat fees for internet service, which remains the same whether RCN's subscribers infringe Plaintiffs' copyrights or not.  *See* Compl. ¶¶ 145–48; *see also Ellison*, 357 F.3d at 1079.  Therefore, the Complaint fails to plausibly allege that RCN profited directly from the alleged infringement; rather, any financial benefit from the alleged infringement is attenuated or incidental, not direct.

For similar reasons, the Third Circuit Court of Appeals affirmed a district court's dismissal of a vicarious copyright infringement claim in *Parker*.  *See* 242 F. App'x at 837.  In *Parker*, the plaintiff brought a vicarious copyright infringement claim against Google and alleged that his copyrighted work appeared in Google searches, archival copies created by Google, and Google-maintained online bulletin boards.  To satisfy the direct financial interest prong, the plaintiff claimed that Google's advertising revenue is directly related to the number of Google users and that the number of users "is dependent directly on Google's facilitation of and participation in the alleged infringement."  *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500 (E.D. Pa. 2006).  But the district court disagreed and held that the plaintiff had failed to plausibly allege "any actual relationship between infringing activity and the number of [Google] users."  *Id.*  In so holding, the district court relied on an excerpt from Nimmer on Copyright that is particularly relevant here: "[L]arge,

commercial ISPs derive insufficient revenue from isolated infringing bits, in the context of the billions of bits that cross their servers[,] to characterize them as financially benefiting from the conduct of which complaint is made." *Id.* On appeal, the Third Circuit agreed that the plaintiff had "failed to allege that Google had a direct financial interest in the purported infringing activity," and "[t]hus, this claim was properly dismissed." 242 F. App'x at 837.

The district court's reasoning in *Parker* applies here as well. Like in *Parker*, Plaintiffs have failed to plausibly allege "any actual relationship" between the allegedly infringing activity and the number of RCN subscribers. And like Google in *Parker*, RCN is a "large, commercial ISP[] [that] derive[s] insufficient revenue from isolated infringing bits, in the context of the billions of bits that cross [its] servers[,] to characterize [RCN] as financially benefiting from the conduct of which complaint is made." *Parker*, 422 F. Supp. 2d at 500.

Plaintiffs merely allege, in conclusory fashion, that "the ability of subscribers to use Defendants' service to engage in widespread piracy of copyright protected content including Plaintiffs' Works without having their services terminated despite multiple notices being sent to Defendants act as a powerful draw for subscribers of Defendants' service." *See* Compl. ¶ 145. Plaintiffs allege no *facts* to support this "powerful draw" conclusion. And without pleaded facts,

Plaintiffs have nothing but a "bald assertion" that is insufficient to state a claim to relief. *See Morse*, 132 F.3d at 906.

> **D.    Plaintiffs' claim for injunctive relief (count III) should be dismissed because injunctive relief is a remedy, not a cause of action.**

Plaintiffs' count III is an "Application for Website-Blocking Injunction" under 17 U.S.C. §§ 512(j)(1)(A) and (B).  But the Third Circuit Court of Appeals has stated that "an injunction is a remedy rather than a cause of action, so a separate claim for injunctive relief is unnecessary."  *Chruby v. Kowaleski*, 534 F. App'x 156, 160 (3d Cir. 2013).  Therefore, under *Chruby*, the Court should dismiss Plaintiffs' claim for injunctive relief because injunctive relief is a remedy, not a cause of action.  *See, e.g.*, *Educ. Impact, Inc. v. Danielson*, No. 3:14-cv-FLW-LHG, 2015 WL 381332, at *19 (D.N.J. Jan. 28, 2015) (dismissing claim for injunctive relief, citing *Chruby*).  Furthermore, Plaintiffs have failed to plead facts sufficient to support injunctive relief, such as a threat of irreparable harm.  *See* Compl. ¶¶ 148–153.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint under Rule 12(b)(6) for failure to state a claim.

Dated:  October 19, 2021                  Respectfully submitted,


                                          By: *Edward F. Behm, Jr.*
                                          Edward F. Behm, Jr.
                                          ARMSTRONG TEASDALE LLP
                                          Attorney I.D. No. 017972002
                                          2005 Market Street
                                          29th Floor, One Commerce Square
                                          Philadelphia, PA 19103
                                          (267) 780-2000
                                          (215) 405-9070 (fax)
                                          ebehm@atllp.com

                                          Richard L. Brophy*
                                          Zachary C. Howenstine*
                                          Margaret R. Szewczyk*
                                          ARMSTRONG TEASDALE LLP
                                          7700 Forsyth Blvd., Suite 1800
                                          St. Louis, Missouri 63105
                                          (314) 621-5070
                                          rbrophy@atllp.com
                                          zhowenstine@atllp.com
                                          mszewczyk@atllp.com
                                          *Pro Hac Vice forthcoming

                                          Joseph J. Gribbin*
                                          ARMSTRONG TEASDALE LLP
                                          300 Delaware Avenue, Suite 210
                                          Wilmington, Delaware 19801
                                          (302) 824-7089
                                          jgribbin@atllp.com
                                          *Pro Hac Vice forthcoming

                                          *Attorneys for Defendants RCN
                                          Telecom Services of Massachusetts,
                                          LLC and RCN Telecom Services, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of October, 2021, I caused a copy of the

foregoing to be served upon all counsel of record via ECF notification.

By:   <u>*Edward F. Behm, Jr.*</u>
      Edward F. Behm, Jr.