## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BODYGUARD PRODUCTIONS, INC., ET AL., | |
| Plaintiffs, | |
| v. | No.  3:21-cv-15310-FLW-TJB |
| | ORAL ARGUMENT REQUESTED |
| RCN TELECOM SERVICES OF MASSACHUSETTS, LLC and RCN TELECOM SERVICES, LLC, | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| Defendants. | |

Edward F. Behm, Jr.
ARMSTRONG TEASDALE LLP
Attorney I.D. No. 017972002
2005 Market Street
29th Floor, One Commerce Square
Philadelphia, PA 19103
(267) 780-2000
(215) 405-9070 (fax)
ebehm@atllp.com

*Attorney for Defendants RCN Telecom Services of Massachusetts, LLC and RCN Telecom Services, LLC [additional counsel on signature block]*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................... ii

     I.     INTRODUCTION ............................................................... 1

     II.    FACTUAL BACKGROUND ................................................. 3

A.    Maverickeye UG ............................................................... 3

B.    Senthil Segaran ................................................................. 5

C.    RCN's DMCA Policy and Program .................................... 6

     III.   LEGAL STANDARD ........................................................ 7

     IV.   ARGUMENT .................................................................. 8

A.    The Court Should Dismiss Plaintiffs' Contributory and Vicarious Copyright Infringement Claims .................................................. 8

B.    The Court Should Dismiss Plaintiffs' DMCA Claim ............................. 19

C.    The Court Should Dismiss Plaintiffs' Claim for Injunctive Relief (Count III) because Injunctive Relief is a Remedy, not a Cause of Action. ....................................................................... 25

     V.    CONCLUSION .............................................................. 26

CERTIFICATE OF SERVICE ................................................. 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
 239 F.3d 1004 (9th Cir. 2001) ..........................................................................9

*After II Movie, LLC, et al. v. Grande Communications Networks, LLC*,
 No. 1:21-cv-709 (W.D. Tex.) ..............................................................................5

*After II Movie, LLC, et al. v. WideOpenWest Finance, LLC*,
 No. 1:21-cv-1901 (D. Colo.)................................................................................5

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)......................................................................................7, 10

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)............................................................................................7

*Boim v. Holy Land Found. For Relief & Dev*.,
 549 F.3d 685 (7th Cir. 2008) ..........................................................................20

*Cent. Bank of Denver N.A. v. First Interstate Bank of Denver, N.A.*,
 511 U.S. 164 (1994) .................................................................................... 20-21

*Chruby v. Kowaleski*,
 534 F. App'x 156 (3d Cir. 2013) ......................................................................26

*Cobbler Nevada LLC v. Gonzales*,
 901 F.3d 1142 (9th Cir. 2018) .....................................................10, 11, 12, 13

*Cobbler Nevada, LLC v. Gonzales*,
 No. 3:15-cv-866, 2016 WL 3392368 (D. Or. June 8, 2016) .............................12

*Educ. Impact, Inc. v. Danielson*,
 No. 14-937-FLW-LHG, 2015 WL 381332 (D.N.J. Jan. 28, 2015) ...................26

*Ellison v. Robertson*,
 357 F.3d 1072 (9th Cir. 2004) ...................................................................17, 18

*Fathers & Daughters Nev., LLC v. Zhang*,
   No. 3:16-cv-1443, 2018 WL 3023089 (D. Or. June 18, 2018) ..........................2

*Harrington v. Pinterest, Inc.*, No. 5:20-cv-5290, 2021 WL 4033031, at
   *6 (N.D. Cal. Sept. 3, 2021) ...................................................................................25

*Indep. Project, Inc. v. Shore Point Plaza, LLC*,
   No. 18-15048-FLW-ZNQ, 2020 WL 6363714 (D.N.J. Oct. 29, 2020) ...........12

*Leonard v. Stemtech Int'l Inc*,
   834 F.3d 376 (3d Cir. 2016) .........................................................................9, 13

*Luvdarts LLC v. AT&T Mobility, LLC*,
   No. 2:10-cv-05442, 2011 WL 997199 (C.D. Cal. Mar. 17, 2011) ....................15

*Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*,
   545 U.S. 913 (2005)...........................................................................14, 15, 17

*Mills v. Netflix, Inc.*,

   No. 2:19-cv-7618, 2020 WL 548558 (C.D. Cal. Feb. 3, 2020)........................25

*Morse v. Lower Merion Sch. Dist.*,
   132 F.3d 902 (3d Cir. 1997) ................................................................7, 10, 20

*Parker v. Google, Inc.*,
   242 F. App'x 833 (3d Cir. 2007) ..................................................13, 17, 18, 19

*Parker v. Google, Inc.*,
   422 F. Supp. 2d 492 (E.D. Pa. 2006).........................................................18, 19

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) .........................................................................17

*Phillips v. Cty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008) ...............................................................................7

*Pierce v. Lifezette, Inc.*,
   No. 1:20-cv-693, 2021 WL 2557241, at *5 (D.D.C. June 2, 2021)……18, 19

*Powers v. Caroline's Treasures Inc.*,
   382 F. Supp. 3d 898, 903–04 (D. Ariz. 2019)………………………………...23

*Smith v. BarnesandNoble.com*, LLC,
   143 F. Supp. 3d 115 (S.D.N.Y. 2015) ................................................................16

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984)...........................................................................................16

*Sovereign Bank v. BJ's Wholesale Club, Inc.*, 395 F. Supp. 2d 183,
   198 (M.D. Pa. 2005) ..........................................................................................21

*Stevens v. Corelogic, Inc.*,
   899 F.3d 666 (9th Cir. 2018) .............................................................................25

*Tanksley v. Daniels*,
   259 F. Supp. 3d 271 (E.D. Pa. 2017)..................................................................15

*Venice PI, LLC v. O'Leary, et al.*,
   No. 17-cv-988-TSZ (W.D. Wash.) ......................................................................2

## Statutes

17 U.S.C. § 512(a) & § 512(i)(1)(A) ...........................................................................7

17 U.S.C. §§ 512(j)(1)(A) and (B)...............................................................................25

## Other Authorities

Fed. R. Civ. P. 8(a)(2)..................................................................................................7

Federal Rule of Civil Procedure 12(b)(6) ..........................................................1, 7, 8

Defendants RCN Telecom Services of Massachusetts, LLC and RCN Telcom Services, LLC (collectively "RCN") move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' Amended Complaint (the "Complaint"). (ECF No. 22).

## I.   INTRODUCTION

Plaintiffs Bodyguard Productions, Inc., *et al.*, purport to own the copyrights to certain motion pictures, primarily direct-to-video movies such as "Mechanic: Resurrection," "Extremely Wicked, Shockingly Vile and Evil," and "Kill Chain." *See* Am. Compl. (ECF No. 22) ¶¶ 9–23 & Ex. A to Am. Compl. (ECF No. 22-1). Defendant RCN is an internet service provider headquartered in New Jersey.

Plaintiffs seek to hold RCN secondarily liable for alleged acts of subscribers of RCN's internet service.  Specifically, Plaintiffs claim that RCN is secondarily liable for copyright infringement because it did not terminate the internet access of subscribers that Plaintiffs' agent, Maverickeye UG, accused of sharing copyrighted content over the internet.  In addition, Plaintiffs claim RCN's subscribers violated the Digital Millennium Copyright Act ("DMCA") by adding information to the file names of digital movie files.  Without any basis in the law (let alone any specific factual allegations beyond conclusions), Plaintiffs seek to hold RCN secondarily liable for these alleged DMCA violations.

Plaintiffs and Maverickeye are part of a well-known web of copyright trolls. *See generally* Ex. A (Feb. 23, 2018 Decl. of J. Christopher Lynch) (investigating the relationships between certain Plaintiffs, Maverickeye, Maverickeye's alter egos GuardaLey and Crystal Bay, and other copyright trolls). Until now, Plaintiffs' *modus operandi* has been to file John Doe lawsuits in the hope of securing quick settlements and to dismiss them at the slightest resistance. *See* Ex. B (Jan. 8, 2018 Order in *Venice PI, LLC v. O'Leary, et al.*, No. 2:17-cv-1075-TSZ (W.D. Wash.)) at 2 & n.1 (collecting cases). Plaintiffs are rarely successful in contested cases. *See, e.g.*, *Fathers & Daughters Nev., LLC v. Zhang*, No. 3:16-cv-1443, 2018 WL 3023089, at *4–5 (D. Or. June 18, 2018) (awarding attorneys' fees to accused infringer where discovery revealed that the plaintiff, an affiliate of Plaintiffs here, did not own the asserted copyright). Additionally, courts and litigants in these cases have persuasively accused Maverickeye of serious wrongdoing, such as submitting fraudulent "expert" declarations from fictitious persons, violating state law by engaging in unlicensed surveillance, and even conspiring with copyright owners to offer copyrighted content over BitTorrent and then sue anyone who tries to download it. *See* Ex. B at 2–3 & n.2; Ex. C (June 13, 2014 Decl. of J. Christopher Lynch) at 29.

Given this background, it is no surprise that Plaintiffs have failed to state plausible secondary copyright infringement claims against RCN.

## II.    FACTUAL BACKGROUND

RCN is an ISP in the business of providing internet connectivity to subscribers.  Am. Compl. (ECF No. 22) ¶¶ 27, 38.  RCN has about as much control over how its customers use the internet as the power company: it controls access and nothing more.

To this point, it is important to recognize what Plaintiffs do ***not*** allege. Plaintiffs do not allege that RCN hosts websites, stores data for customers, or distributes online content, software, or tools.  Plaintiffs do not allege that RCN has any ability to determine what files are stored on the computers and devices people use on its network, or whether there are any file-sharing programs running on those devices.

Nevertheless, Plaintiffs allege that RCN is secondarily liable for copyright infringement allegedly committed by its subscribers because RCN did not terminate their internet access after receiving emails accusing them of copyright infringement.  *See, e.g.*, *id*. ¶¶ 144, 151.

### A.    Maverickeye UG

According to Plaintiffs, they engaged Maverickeye, a third party based in Germany, to monitor BitTorrent activity for infringement of their copyrighted works.  *Id.* ¶ 83.  Plaintiffs allege that Maverickeye would then send "Notices of

infringements"—emails—to RCN regarding instances of copyright infringement by RCN's subscribers.  *Id.* ¶ 113.

The example emails filed with Plaintiffs' Complaint as Exhibit D—like the other emails Plaintiffs intend to rely on—contain nothing more than conclusory allegations of copyright infringement against an IP address.  *See, e.g.*, ECF No. 22-4 at 5 ("The unauthorized download and distribution of this file by your IP address constitutes copyright infringement.").  The email does not discuss, reference, or attach any supporting evidence.  Plaintiffs do not and cannot allege that RCN has any ability to verify allegations like these.

In terms of what Maverickeye did to identify the alleged infringements, Plaintiffs lard their Complaint with jargon to obscure the absence of facts.  For example, Plaintiffs allege that Maverickeye "extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number."  Am. Compl. ¶ 85.  But despite adding more than forty new paragraphs to their Amended Complaint, Plaintiffs still allege no facts regarding how Maverickeye detected actual instances of direct copyright infringement, or what forensic record of direct copyright infringement Maverickeye obtained or preserved.  *See, e.g.*, *id.* ¶¶ 83–89.  In substance, Plaintiffs allege little more than "Maverickeye detected infringement."  *See id*.

### B.     Senthil Segaran

According to Plaintiffs, Senthil Segaran, a resident of the United Kingdom or India, operates (or operated) the torrent website "YTS." *See* Am. Compl. ¶¶ 90–91; Ex. C to Am. Compl. (ECF No. 22-3) at 3.  In support of their Complaint, Plaintiffs attach a "Certificate of Authenticity" ostensibly signed by Mr. Segaran over a year ago, in which he purports to attest to the authenticity of unspecified records "attached hereto."  ECF No. 22-3 at 3.  Assuming the date is accurate and the signature is authentic, Segaran executed the certificate not long after entering into *pro se* consent judgments with certain Plaintiffs and their affiliates, to resolve their copyright infringement lawsuits against him.[1]  It is concerning that Plaintiffs appear to have submitted this very same Certificate of Authenticity, ***regarding the alleged authenticity of different documents***, in support of other recent copyright infringement complaints.  ECF No. 1-2 & 25-2, *After II Movie, LLC, et al. v. WideOpenWest Fin., LLC*, No. 1:21-cv-1901 (D. Colo.); ECF No. 1-2 & 14-2, *After II Movie, LLC, et al. v. Grande Commc'ns Networks, LLC*, No. 1:21-cv-709 (W.D. Tex.).

Plaintiffs contend that the records submitted with Segaran's certificate are "records of activity of registered user accounts" on the YTS website.  Am. Compl.

---

[1] ECF No. 25, *Wicked Nevada, LLC v. John Doe, et al.,* No. 1:19-cv-413 (D. Haw.); ECF No. 77, *Venice PI, LLC, et al. v. Doe 1, et al.,* No. 1:19-cv-169 (D. Haw.).

¶ 90.  RCN is unaware of any credible record of website activity that looks like this:



ECF No. 22-3 at 1–2.  Despite the heavy redactions in Exhibit C, Plaintiffs did not attempt to file an unredacted copy under seal and have not otherwise provided an unredacted copy to RCN or its counsel.

### C.    RCN's DMCA Policy and Program

For the entire period relevant to this case, RCN has had in place a safe harbor policy pursuant to the Digital Millennium Copyright Act ("DMCA"), under which RCN terminates the accounts of accused copyright infringers in appropriate circumstances.  *See* 17 U.S.C. § 512(a) & § 512(i)(1)(A).  Plaintiffs' allegations to

the contrary (*e.g.*, Am. Compl. ¶ 139) are demonstrably false.  RCN has a robust program under which it notifies account holders of infringement allegations and ultimately permanently terminates the account upon receipt of additional complaints.

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that raise a right to relief above the speculative level.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  Although a court must accept all factual allegations in the plaintiff's complaint as true and view them in the light most favorable to the plaintiff, *Phillips v. Cty. of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept a complaint's "bald assertions" or "legal conclusions."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Iqbal*, 556 U.S. at 678 (noting that "naked assertion[s]" devoid of "further factual enhancement" are insufficient to state a plausible claim).

## IV.   ARGUMENT

Plaintiffs do not accuse RCN of directly infringing their copyrights or violating the DMCA.  Instead, they contend that RCN is secondarily liable for its subscribers' alleged acts of copyright infringement (Counts I and II) and alleged violations of the DMCA (Count IV).  Am. Compl. ¶¶ 160–73, 184–202.  But Plaintiffs do not plausibly allege that RCN's subscribers directly infringed their copyright—a necessary element of contributory and vicarious copyright infringement—and their allegations regarding other elements of contributory and vicarious infringement are also deficient.  Nor do Plaintiffs plausibly allege that RCN's subscribers violated the DMCA, and their purported cause of action for secondary DMCA liability is not authorized by the statute. Finally, Plaintiffs' Count III is a claim for injunctive relief, which is a remedy, not a cause of action. For these reasons, all four counts in Plaintiffs' Complaint should be dismissed under Rule 12(b)(6).

### A.   The Court Should Dismiss Plaintiffs' Contributory and Vicarious Copyright Infringement Claims

To state a claim for contributory or vicarious copyright infringement, Plaintiffs must plausibly allege, among other things, that (1) RCN's subscribers directly infringed Plaintiffs' copyrights, and (2) RCN had a financial interest in or induced, caused, or materially contributed to those alleged infringements. *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016).  On both points, Plaintiffs'

allegations are fatally flawed—legally and factually.  Plaintiffs therefore fail to state a claim upon which relief could be granted.

      (i)     Plaintiffs fail to plausibly allege that any of RCN's subscribers directly infringed the copyrights at issue.

"Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party." *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001)). "Thus, to prove a claim of contributory or vicarious infringement, a plaintiff must first show direct infringement by a third party." *Id.*

Here, Plaintiffs' claims are expressly premised on the notion that RCN is secondarily liable for acts of direct copyright infringement by RCN's subscribers. Am. Compl. ¶¶ 164 ("Defendants are liable as contributory copyright infringers for the infringing acts of their subscribers."), 169 ("Defendants are vicariously liable for the infringing acts of their subscribers' infringements . . . ."). But Plaintiffs identify the alleged direct infringers by IP address only; there are no additional allegations demonstrating that the allegedly infringing activity at that IP address was performed by an RCN subscriber.

At most, the Complaint alleges that RCN provides IP addresses to its subscribers, and that *someone* using those IP addresses uploaded and downloaded infringing content. But beyond that, there are no pleaded facts in Plaintiffs'

Complaint showing that the alleged infringers are actually RCN subscribers.

*Compare* Am. Compl. ¶ 74 (alleging that "an individual using email address

j65*****@gmail.com" downloaded an infringing file using IP address

207.237.11.70) *with* ECF No. 22-3 at 2 (showing email address

j65*****@gmail.com on a heavily-redacted exhibit purporting to show website

activity); *see also, e.g.*, *id.* ¶¶ 93–95 (attributing allegedly infringing activity to

"*Defendants' subscriber at* IP address…" with no facts linking the subscriber to the

IP address).  In other words, Plaintiffs try to connect the dots between an IP address

and an RCN subscriber though only "bald assertions" and "unadorned, the-

defendant-unlawfully-harmed-me accusation[s]," both of which are insufficient to

plausibly state a claim for either contributory copyright infringement (Count I) or

vicarious copyright infringement (Count II).  *See Iqbal*, 556 U.S. at 678; *Morse*,

132 F.3d at 906.

Other courts have dismissed copyright infringement claims for this reason.

For example, in *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018),

the Ninth Circuit Court of Appeals affirmed the district court's finding that plaintiff

had not plausibly stated a claim for direct infringement due to the plaintiff's failure

to link the IP address to the defendant.  The court explained:

> Although copyright owners can often trace
> infringement of copyrighted material to an IP
> address, it is not always easy to pinpoint the
> particular individual or device engaged in the

infringement.  Internet providers, such as Comcast
or AT&T, can go so far as to identify the individual
who is registered to a particular IP address (i.e., an
account holder) and the physical address associated
with the account, but that connection does not mean
that the internet subscriber is also the infringer.  The
reasons are obvious—simply establishing an
account does not mean the subscriber is even
accessing the internet, and multiple devices can
access the internet under the same IP address.

*Id.* at 1146–47.  Thus, the *Cobbler* court concluded that the district court properly

dismissed the copyright infringement claims because the plaintiff had not alleged

facts that were "above a speculative level."  *Id.* at 1147.  "Because multiple devices

and individuals may be able to connect via an IP address, simply identifying the IP

subscriber solves only part of the puzzle.  A plaintiff must allege something more

to create a reasonable inference that a subscriber is also an infringer."  *Id.* at 1145.

So too here.  Like the plaintiff in *Cobbler*, Plaintiffs have failed to allege

"something more" beyond identifying an IP address to create a reasonable

inference that a particular RCN subscriber is also the alleged direct infringer.  And

without a reasonable inference that an RCN subscriber directly infringed Plaintiffs'

copyrights, Plaintiffs' secondary copyright infringement claims against RCN

cannot survive a motion to dismiss.  *See also Cobbler Nevada, LLC v. Gonzales*,

No. 3:15-cv-866, 2016 WL 3392368, at *1, *3 (D. Or. June 8, 2016) ("While it is

*possible* that the subscriber is also the person who downloaded the movie, it is also

possible that a family member, a resident of the household, or an unknown person

engaged in the infringing conduct.") (emphasis in original); *PTG Nevada, LLC v. Chan*, No. 1:16-cv-1621, 2017 WL 168188, at *2 (N.D. Ill. Jan. 17, 2017) ("Due to the risk of 'false positives,' an allegation that an IP address is registered to an individual is not sufficient in and of itself to support a claim that the individual is guilty of infringement.") (citations omitted).

Indeed, district courts—including courts in this district—have cited *Cobbler* in denying motions for default judgment on copyright infringement claims, which similarly require courts to evaluate the pleaded claim's sufficiency.[2]  For example, in *Malibu Media v. Park*, Judge Vazquez denied the plaintiff's motion for default judgment and held that the plaintiff "will have to show something more than merely tying [d]efendant to an IP address in order to sufficiently establish copyright infringement."  No. 2:17-cv-12107-JMV-MF, 2019 WL 2960146, at *6 (D.N.J. July 9, 2019).  Likewise, in *Malibu Media, LLC v. Peled*, Judge Hayden found "Judge Vazquez's reasoning [in *Park*] very persuasive" and agreed that a plaintiff's mere identification of an internet subscriber linked to an allegedly infringing IP address is insufficient to state a claim for copyright infringement. No. 2:18-cv-141-KSH-CLW, 2020 WL 831072, at *5–6 (D.N.J. Feb. 20, 2020).

---

[2] In ruling on a motion for default judgment, a court must "ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'"  *See Indep. Project, Inc. v. Shore Point Plaza, LLC*, No. 3:18-15048-FLW-ZNQ, 2020 WL 6363714, at *2 n.3 (D.N.J. Oct. 29, 2020).

Here, because Plaintiffs have similarly failed to link any of RCN's subscribers to the allegedly infringing IP addresses, Plaintiffs' Amended Complaint fails to state a copyright infringement claim.

> (ii)    Plaintiffs' claim for contributory copyright infringement (Count I) should be dismissed because Plaintiffs fail to plausibly allege that RCN materially contributed to or induced direct infringement.

To state a claim for contributory copyright infringement, a plaintiff must plausibly allege that: (1) a third party directly infringed the plaintiff's copyright; (2) the defendant knew that the third party was directly infringing; and (3) the defendant materially contributed to or induced the infringement.  *See Leonard*, 834 F.3d at 387; *see also Parker v. Google, Inc.*, 242 F. App'x 833, 837 (3d Cir. 2007).

For the reasons set forth in section IV.A.i above, Plaintiffs have failed to plausibly identify any RCN subscriber as a direct infringer—a necessary component of contributory copyright infringement.  Further, nothing in Plaintiffs' Complaint plausibly alleges that RCN materially contributed to or induced direct infringement, by an RCN subscriber or otherwise.

The Supreme Court addressed this element of the contributory copyright infringement test most recently in *Metro-Goldwyn-Mayer Studios v. Grokster, Ltd*., 545 U.S. 913 (2005).  In *Grokster*, the Supreme Court held that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other *affirmative steps* taken to foster

13

infringement, is liable for the resulting acts of infringement by third parties." *Id.* at 918 (emphasis added). But the *Grokster* court cautioned that "mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability," "[n]or would ordinary acts incident to product distribution, such as offering customers technical support or product updates, support liability in themselves." *Id.* at 937. "[I]n the absence of other evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement, if the device otherwise was capable of substantial noninfringing uses." *Id.* at 939 n.12.

Here, at best, Plaintiffs' Complaint includes only two allegations of RCN's "affirmative steps" that allegedly encouraged or induced infringement: (1) RCN advertised fast internet speeds, *see* Am. Compl. ¶¶ 153–155; and (2) RCN failed to terminate the accounts of alleged "repeat subscribers" or otherwise prevent them from accessing RCN's network, *see* Am. Compl. ¶¶ 139, 141. But neither of these alleged acts—accepted as true on a motion to dismiss and construed in Plaintiffs' favor—plausibly states a claim for contributory copyright infringement.

First, an ISP advertising its internet speed is precisely the kind of "ordinary act[] incident to product distribution" that the *Grokster* court specifically excluded from supporting liability. *See Grokster*, 545 U.S. at 937; *see also see also Luvdarts LLC v. AT&T Mobility, LLC*, No. 2:10-cv-05442, 2011 WL 997199, at *2 (C.D.

Cal. Mar. 17, 2011) (plaintiffs failed to state a secondary copyright infringement claim against wireless carriers because, among other reasons, they did not allege "that Defendants undertook 'any substantial promotional or advertising efforts to encourage infringing activity'") (cleaned up).

Second, failing to terminate a subscriber's internet account is not an "affirmative step" at all. *See Grokster*, 545 U.S. at 919. Rather, Plaintiffs' claim that RCN failed to terminate subscribers' internet accounts is a claim "merely based on a failure to take affirmative steps to prevent infringement," which the *Grokster* specifically noted could not support a finding of contributory liability. *Id.* at 939 n.12; *see also id.* at 937 (a defendant's "mere knowledge of infringing potential or of actual infringing uses" cannot support a finding of contributory liability). In other words, Plaintiffs' allegations suggest only that RCN provided the means for infringement to occur, which is not enough to state a claim for contributory copyright infringement. *See, e.g.*, *Tanksley v. Daniels*, 259 F. Supp. 3d 271, 296 (E.D. Pa. 2017) (dismissing contributory infringement claim because plaintiff alleged only that defendant provided a forum that led to infringement), *aff'd*, 902 F.3d 165 (3d Cir. 2018); *see also Gordon v. Pearson Educ., Inc.*, 85 F. Supp. 3d 813, 822 (E.D. Pa. 2015) (recognizing that "merely supplying the means to accomplish infringing activity is not enough" to state a claim for contributory copyright infringement).

Finally, even if Plaintiffs had adequately alleged that RCN contributed to infringement, Plaintiffs still have not stated a claim because RCN's internet service is capable of "'substantial' or 'commercially significant' noninfringing uses." *Grokster,* 545 U.S. at 942 (Ginsburg, J., concurring). The sale or distribution of a product used for direct copyright infringement "does not constitute contributory infringement if the product is widely used for legitimate, unobjectionable purposes. Indeed, it need merely be capable of substantial noninfringing uses." *Sony Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 442 (1984); *see also Smith v. BarnesandNoble.com*, LLC, 143 F. Supp. 3d 115, 124 (S.D.N.Y. 2015) ("The [*Sony*] rule requires a court to determine whether a product or service is *capable* of substantial non-infringing uses, not whether it is currently used in a non-infringing manner.") (emphasis in original), *aff'd on other grounds*, 839 F.3d 163 (2d Cir. 2016). Plaintiffs cannot dispute that RCN's internet service is capable of substantial noninfringing uses, and they do not allege otherwise. *See, e.g.*, *Cobbler*, 901 F.3d at 1149 ("Providing internet access can hardly be said to be distributing a product or service that is not capable of substantial or commercially significant noninfringing uses.") (cleaned up). Accordingly, RCN cannot be secondarily liable for its subscribers' alleged infringements as a matter of law.

      (iii)    Plaintiffs' claim for vicarious copyright infringement (Count II) should be dismissed because Plaintiffs fail to plausibly allege that RCN has a direct financial interest in the infringing activity.

To state a claim for vicarious copyright infringement, a plaintiff must plausibly allege that a defendant: (1) has a direct financial interest in the infringing activity; and (2) has the right and ability to supervise the activity which causes the infringement.  *See Grokster*, 545 U.S. at 930; *Parker*, 242 F. App'x at 837.

With regard to the "direct financial interest" element, Plaintiffs must allege more than the mere receipt of "flat periodic payments for service." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007).  Instead, courts require a claimant to establish that the service provider "attracted or retained subscriptions because of the infringement or lost subscriptions because of [the] eventual obstruction of the infringement." *Ellison*, 357 F.3d at 1079.  The relevant inquiry "is whether the infringing activity constitutes a draw for subscribers, not just an added benefit." *Id*.; *see also Parker*, 242 F. App'x at 837 (approvingly citing *Ellison* standard).

Plaintiffs' allegations do not meet this standard.  The only financial benefit that Plaintiffs allege is the receipt of flat fees for internet service, which remains the same whether RCN's subscribers infringe Plaintiffs' copyrights or not. *See* Am. Compl. ¶¶ 152–55; *see also Ellison*, 357 F.3d at 1079.  Therefore, the Complaint fails to plausibly allege that RCN profited directly from the alleged

17

infringement; rather, any financial benefit from the alleged infringement is attenuated or incidental, not direct.

For similar reasons, the Third Circuit Court of Appeals affirmed a district court's dismissal of a vicarious copyright infringement claim in *Parker*. *See* 242 F. App'x at 837.  In *Parker*, the plaintiff brought a vicarious copyright infringement claim against Google and alleged that his copyrighted work appeared in Google searches, archival copies created by Google, and Google-maintained online bulletin boards.  To satisfy the direct financial interest prong, the plaintiff claimed that Google's advertising revenue is directly related to the number of Google users and that the number of users "is dependent directly on Google's facilitation of and participation in the alleged infringement."  *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500 (E.D. Pa. 2006).  But the district court disagreed and held that the plaintiff had failed to plausibly allege "any actual relationship between infringing activity and the number of [Google] users."  *Id.*  In so holding, the district court relied on an excerpt from Nimmer on Copyright that is particularly relevant here: "[L]arge, commercial ISPs derive insufficient revenue from isolated infringing bits, in the context of the billions of bits that cross their servers[,] to characterize them as financially benefiting from the conduct of which complaint is made."  *Id.*  On appeal, the Third Circuit agreed that the plaintiff had "failed to allege that Google

had a direct financial interest in the purported infringing activity," and "[t]hus, this claim was properly dismissed."  242 F. App'x at 837.

The district court's reasoning in *Parker* applies here as well.  Like in *Parker*, Plaintiffs have failed to plausibly allege "any actual relationship" between the allegedly infringing activity and the number of RCN subscribers.  And like Google in *Parker*, RCN is a "large, commercial ISP[] [that] derive[s] insufficient revenue from isolated infringing bits, in the context of the billions of bits that cross [its] servers[,] to characterize [RCN] as financially benefiting from the conduct of which complaint is made."  *Parker*, 422 F. Supp. 2d at 500.

Plaintiffs merely allege, in conclusory fashion, that "the ability of subscribers to use Defendants' service to engage in widespread piracy of copyright protected content including Plaintiffs' Works without having their services terminated despite multiple notices being sent to Defendants act as a powerful draw for subscribers of Defendants' service."  *See* Am. Compl. ¶ 171.  Plaintiffs allege no **_facts_** to support this "powerful draw" conclusion.  And without pleaded facts, Plaintiffs have nothing but a "bald assertion" that is insufficient to state a claim to relief.  *See Morse*, 132 F.3d at 906.

### B.    The Court Should Dismiss Plaintiffs' DMCA Claim

Plaintiffs' Count IV purports to apply the secondary liability principles of copyright infringement to an obscure section of the DMCA, 17 U.S.C. § 1202.  There

is nothing in section 1202 that suggests, much less authorizes, the imposition of secondary liability.  Even if secondary liability were a viable theory under this statute, Plaintiffs also fail to allege facts showing that any RCN subscriber violated the DMCA.  Plaintiffs' DMCA claim should therefore be dismissed.

  (i)  Section 1202 does not provide for secondary liability

  The DMCA, 17 U.S.C. 1202(c), defines "copyright management information" ("CMI") as information "conveyed in connection with" a copyrighted work that identifies title, author, or owner of the work, among other things.  In broad strokes, section 1202 prohibits the intentional dissemination of false CMI and the intentional alteration or removal of CMI.

  Plaintiffs' Count IV alleges that RCN is secondarily liable for its subscribers' alleged violations of section 1202.  Plaintiffs' claim is legally and factually flawed in several ways, but it fundamentally fails because "[s]tatutory silence on the subject of secondary liability means there is none."  *Boim v. Holy Land Found. For Relief & Dev*., 549 F.3d 685, 689 (7th Cir. 2008); *see also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 184 (1994) ("The fact that Congress chose to impose some forms of secondary liability, but not others, indicates a deliberate congressional choice with which the courts should not interfere."); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 395 F. Supp. 2d 183, 198 (M.D. Pa. 2005) (dismissing secondary liability claims that were not

authorized by the relevant statute), *aff'd in relevant part*, 533 F.3d 162 (3d Cir. 2008).  When Congress intends to create secondary liability, "it has little trouble doing so."  *Pinter v. Dahl*, 486 U.S. 622, 650 (1988) (cleaned up).

Section 1202 is silent regarding secondary liability, and RCN is not aware of any case finding a defendant secondarily liable under the statute.  Indeed, allowing secondary liability cannot be reconciled with the requirements of section 1202. Section 1202 expressly requires double scienter as a predicate for liability (for example, knowingly providing false CMI with the intent to cause infringement), whereas the typical elements of contributory and vicarious liability do not.  *See Pierce v. Lifezette, Inc.*, No. 1:20-cv-693, 2021 WL 2557241, at *5 (D.D.C. June 2, 2021) (discussing the double-scienter requirement).  The text of the DMCA establishes that Congress did not intend to "enlarge or diminish vicarious or contributory liability for copyright infringement in connection with any technology, product, service, device, component, or part thereof." 17 U.S.C. § 1201(c)(2).  Thus, the statute cannot be expanded to permit secondary liability. *See, e.g.*, *Doe v. GTE Corp.,* 347 F.3d 655, 659 (7th Cir. 2003) ("A statute that is this precise about who . . . can be liable, should not be read to create a penumbra of additional but unspecified liability.").

Furthermore, the legislative history of the DMCA makes clear that Congress did not intend to allow for secondary liability.  *See, e.g.*, H.R. Rep. No. 105-551, at

22 (1998) ("Section 1202 imposes liability for specified acts.  It does not address the question of liability for persons who manufacture *or provide services*.") (emphasis added).  Because there is no secondary liability under section 1202, Plaintiffs have failed to state claim.

> (ii)    Plaintiffs do not plausibly allege that RCN or any RCN subscriber engaged in conduct that violated the DMCA

Even if section 1202 were to permit secondary liability, Plaintiffs have failed to state a claim against RCN for a number of separate and distinct reasons.

First, Plaintiffs' allegations in support of their Count IV merely ape the general requirements for contributory and vicarious liability for copyright infringement.  *See* Am. Compl. ¶¶ 194–198.  Plaintiffs allege no *facts* showing that RCN: (1) knew any subscriber had violated section 1202; (2) took any steps to encourage or promote the violation of section 1202; (3) could supervise or control its subscribers' compliance with section 1202; or (4) directly profited from its subscribers violating section 1202.  *See id.*  Plaintiffs have therefore failed to state a claim.  *Iqbal*, 556 U.S. at 678.

Second, Plaintiffs fail to plausibly allege the existence of any relevant CMI. Plaintiffs' Count IV is based on the alleged falsification or alteration of information in the file names of digital movie files.  *See, e.g.*, Am. Compl. ¶¶ 96– 102.  CMI, however, is information that is "conveyed in connection with" legitimate copies of the copyrighted work.  17 U.S.C. § 1202(c).  Thus, "[i]n order

for a plaintiff to prove a defendant removed her CMI, she must be able to show it was originally 'conveyed in connection with' the protected work." *Powers v. Caroline's Treasures Inc.*, 382 F. Supp. 3d 898, 903–04 (D. Ariz. 2019).

Here, Plaintiffs do not allege that the alleged CMI was originally conveyed by Plaintiffs or anyone acting on their behalf.  In other words, Plaintiffs do not allege that the digital movie files in question were originally legitimate copies (*e.g.*, digital files purchased from a licensed content provider) with CMI provided by Plaintiffs.  In fact, it is more plausible from Plaintiffs' allegations that the file names were created by whoever initially chose to distribute the file over the internet.  *See, e.g.*, Am. Compl. ¶¶ 62–63 (alleging that the original distributor of the file creates the file).  Because Plaintiffs' allegations fail to establish that the information in question is protected CMI, they have failed to state a claim under section 1202.

Third, Plaintiffs fail to plausibly allege that any CMI was falsified, removed, or altered, as required by section 1202.  Plaintiffs contend that RCN subscribers violated the DMCA by distributing movie files with "added wording" such as the initials RARBG or YTS.  Am. Compl. ¶¶ 98–102.  This alleged conduct does not violate section 1202 because such information is neither false CMI (per section 1202(a)) nor does it constitute an alteration or removal of CMI (per section 1202(b)).  Exhibit D to the Complaint (ECF No. 22-4) shows that the title of each

movie at issue—the alleged CMI—was still present in each file name.  In other words, Plaintiffs do not allege any falsification, alteration, or removal of alleged CMI—instead, they merely allege the _addition_ of other information to the file name.  *See, e.g*. Am. Compl. ¶¶ 98-102.  This is not actionable under the plain language of section 1202, and RCN is not aware of any authority suggesting otherwise.

Fourth, for the same reasons discussed above in section IV.B.i, Plaintiffs have failed to allege that any *RCN subscriber* violated section 1202.  Plaintiffs identify certain alleged wrongdoers by IP address, but Plaintiffs offer no allegations indicating that the person who allegedly used that IP address to violate section 1202 is actually an RCN subscriber (as opposed to someone else using the subscriber's internet connection, or someone else altogether).  Without such allegations, Plaintiffs cannot state a claim.  *See, e.g.*, *Cobbler Nevada*, 901 F.3d at 1145.

Finally, Plaintiffs also fail to allege the double scienter required by section 1202(a) and (b).  *See Pierce*, 2021 WL 2557241, at *5.  It is insufficient for Plaintiffs to vaguely allege that unspecified RCN subscribers generally intended to induce or facilitate infringement.  *See, e.g.*, Am. Compl. ¶¶ 108–110.  Instead, Plaintiffs were obligated to come forward with "specific allegations as to how identifiable infringements will be affected."  *Stevens v. Corelogic, Inc.*, 899 F.3d

24

666, 673–74 (9th Cir. 2018); *see also Mills v. Netflix, Inc.*, No. 2:19-cv-7618, 2020 WL 548558, at \*2 (C.D. Cal. Feb. 3, 2020) (same); *Harrington v. Pinterest, Inc*., No. 5:20-cv-5290, 2021 WL 4033031, at \*6 (N.D. Cal. Sept. 3, 2021) (dismissing section 1202 count because complaint alleged "nothing more than the possibility of encouraging infringement"). Given the absence of any such allegations, Plaintiffs have failed to state a claim and Count IV should be dismissed.

### C. The Court Should Dismiss Plaintiffs' Claim for Injunctive Relief (Count III) because Injunctive Relief is a Remedy, not a Cause of Action.

Plaintiffs' Count III is an "Application for Website-Blocking Injunction" under 17 U.S.C. §§ 512(j)(1)(A) and (B). But the Third Circuit Court of Appeals has stated that "an injunction is a remedy rather than a cause of action, so a separate claim for injunctive relief is unnecessary." *Chruby v. Kowaleski*, 534 F. App'x 156, 160 (3d Cir. 2013). Therefore, under *Chruby*, the Court should dismiss Plaintiffs' claim for injunctive relief because injunctive relief is a remedy, not a cause of action. *See, e.g.*, *Educ. Impact, Inc. v. Danielson*, No. 3:14-cv-FLW-LHG, 2015 WL 381332, at \*19 (D.N.J. Jan. 28, 2015) (dismissing claim for injunctive relief, citing *Chruby*). Furthermore, Plaintiffs have failed to plead facts (as opposed to legal conclusions) sufficient to support injunctive relief. *See* Am. Compl. ¶¶ 174–185.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended

Complaint under Rule 12(b)(6) for failure to state a claim.

Dated:  November 29, 2021                    Respectfully submitted,


                                              By: *Edward F. Behm, Jr.*
                                              Edward F. Behm, Jr.
                                              ARMSTRONG TEASDALE LLP
                                              Attorney I.D. No. 017972002
                                              2005 Market Street
                                              29th Floor, One Commerce Square
                                              Philadelphia, PA 19103
                                              (267) 780-2000
                                              (215) 405-9070 (fax)
                                              ebehm@atllp.com

                                              Richard L. Brophy*
                                              Zachary C. Howenstine*
                                              Margaret R. Szewczyk*
                                              Angela B. Kennedy*
                                              Sydney K. Johnson*
                                              ARMSTRONG TEASDALE LLP
                                              7700 Forsyth Blvd., Suite 1800
                                              St. Louis, Missouri 63105
                                              (314) 621-5070
                                              rbrophy@atllp.com
                                              zhowenstine@atllp.com
                                              mszewczyk@atllp.com
                                              *Admitted Pro Hac Vice*

                                              Joseph J. Gribbin*
                                              ARMSTRONG TEASDALE LLP
                                              300 Delaware Avenue, Suite 210
                                              Wilmington, Delaware 19801
                                              (302) 824-7089
                                              jgribbin@atllp.com
                                              *Admitted Pro Hac Vice*

                                              *Attorneys for Defendants RCN
                                              Telecom Services of Massachusetts,
                                              LLC and RCN Telecom Services, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of November, 2021, I caused a copy of

the foregoing to be served upon all counsel of record via ECF notification.

By:   *Edward F. Behm, Jr.*
      Edward F. Behm, Jr.