# Exhibit C

HONORABLE THOMAS O. RICE

J. CHRISTOPHER LYNCH, WSBA #17462
JEFFREY R. SMITH, WSBA #37460
RHETT V. BARNEY, WSBA #44764
LEE & HAYES, PLLC
601 W. Riverside Avenue, Suite 1400
Spokane, WA 99201
Phone: (509) 324-9256
Fax: (509) 323-8979
Emails: chris@leehayes.com
jeffreys@leehayes.com
rhettb@leehayes.com

*Counsel for Defendant Ryan Lamberson*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ELF-MAN, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> RYAN LAMBERSON, <br><br> Defendant. | No. 2:13-CV-00395-TOR <br><br> DECLARATION OF J. CHRISTOPHER LYNCH IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL <br><br> Hearing: July 14, 2014 <br> Time: 6:30 p.m. <br> Without Oral Argument |

I, J. Christopher Lynch, declare as follows:

1. I am over 18 years of age and am competent to testify. I make this declaration based on my own personal knowledge. I am one of the attorneys for Defendant, Ryan Lamberson (hereinafter, "Mr. Lamberson").

DECLARATION OF
J. CHRISTOPHER LYNCH - 1

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

2.    I certify that I have attempted in good faith to obtain the discovery sought prior to bringing this Motion to Compel. I have spoken with counsel for plaintiff Carl Crowell over the telephone and I have written multiple emails to Mr. Crowell and Ms. VanderMay demanding the requested documents, all to no avail. Plaintiff has shown no willingness to provide the documents, to debate the claimed privilege, or even to provide the required privilege log under Fed. R. Civ. P. 26(b)(5)(A). Today, June 13, 2014, I spoke with attorney David Lowe of Seattle who told me he may become attorney for Elf-Man, LLC in this case. I informed him of the outstanding discovery and I was not informed that he had any authority to provide the documents or privilege logs.

3.    Attached as Exhibit A is a true and correct copy of the Second Set of Requests for Production and the Responses Thereto, including a copy of the envelope in which they were received. The Requests were served on April 22, 2014. The responses were received on May 30, 2014, as seen by the copy received date stamp from my firm. The responses were postmarked May 28, 2014, as seen by the postmark on the envelope.

4.    On April 21, 2014, I wrote to counsel for plaintiff and informed her that we had discovered the Gerephil Molina presentation about APMC ("the APMC Presentation") which is found at:

http://prezi.com/b_f7djco81ri/copy-of-themanako123/.

5.    Because the APMC Presentation differs significantly from the explanation of the relationship of the plaintiff to the investigators provided by

DECLARATION OF
J. CHRISTOPHER LYNCH - 2

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

1 plaintiff in response to Request for Production No. 15, and because the APMC Presentation indicates that APMC is not only the investigator, but the source of funding and of the strategy and pleadings in this matter, and because the APMC Presentation expressly references plaintiff's identified witness Mr. Macek, I prepared the three targeted Requests for Production about APMC that are the subject of this Motion to Compel.

6. My April 21, 2014, email to plaintiff's counsel forewarned her about the three new requests for production. I specifically addressed the APMC Presentation and how it leads to the conclusion there could be no privilege for APMC correspondence. I requested counsel for plaintiff to provide an explanation of privilege if there could be one. A copy of this email redacted to eliminate confidential material is attached as Exhibit B.

7. I wrote once more on the subject on April 22, 2014, serving the discovery and explaining why the requested material could not be privileged. We invited a dialogue on it, telling counsel we assumed her silence to indicate concurrence with our presumptions. A copy of this email redacted to eliminate confidential material is attached as Exhibit C.

8. Plaintiff's counsel responded to me the next day on April 23, 2014, refusing to address the issue of privilege and then foreshadowing the failure to produce discovery we predicted would come. Here is a quote from her April 23, 2014 email on the point:

DECLARATION OF
J. CHRISTOPHER LYNCH - 3

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

> Please understand further that I am not at your beck and call and will respond to communications from your office as my calendar and other obligations permit.
>
> With respect to additional discovery, the way this process works is that you should serve discovery requests pursuant to the Federal Rules of Civil Procedure and we will respond in a timely manner. To the extent that you seek material that is not subject to discovery, please expect us to file our objections. Any issues that cannot be resolved by counsel will proceed to Judge Rice. You can, of course, continue to try to circumvent this process but you will not succeed. We will respond to your second request for production in the ordinary course and following this process.

9. Then, as predicted, no documents were produced. Additionally, although plaintiff's counsel indicated she would "respond in a timely manner" the "responses" were not received until May 30, 2014. If plaintiff desired a sincere discussion about the merits of its objections, it could have served the objections upon receipt of the discovery, but plaintiff chose to wait until past the last minute, again attempting to avoid an obligation to shine light on its cloaked investigators.

10. I noticed that the discovery responses received on May 30, 2014, bore the May 28, 2014, postmark and that this was not consistent with the May 22, 2014, Certificate of Service. I knew from my experience that failure to timely serve discovery is a waiver of objections in the Federal system, so I knew this discrepancy was substantively important.

11. Consequently, on the date of receipt of these documents, I wrote to counsel for plaintiff and offered her an opportunity to correct the Certificate of Service, which seemed as if it must be in error, since causing something to be

DECLARATION OF
J. CHRISTOPHER LYNCH - 4

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

served on May 22 would not result in a postmark of May 28. This email is attached as Exhibit D.

12. Counsel for plaintiff replied on May 30, 2014, and provided some hearsay that her assistant mailed the document as instructed on May 22, 2014, and that the fault must lie with the post office. This email is attached as Exhibit E.

13. This explanation did not persuade me that the service was completed on May 22. I checked other discovery mailed by plaintiff's counsel to my law firm. My firm "copy receive stamps" incoming pleadings so I compared other pleadings from plaintiff's counsel and found that none of them had an eight day delay from the stated Certificate of Service to the delivery date. I also checked and discovered that other discovery served by plaintiff had been simultaneously mailed and emailed to my firm with a Certificate of Service showing both methods of service, but this Second Set of Requests for Production had not been simultaneously emailed as it was mailed; in fact, it had not been emailed at all. This made me more suspicious that counsel for plaintiff might have wished that the responses were sent on May 22, but likely they were not. It occurred to me that one way to reconcile the discrepancy would be for the assistant that was the subject of the May 30 hearsay explanation to provide his or her own declaration as to the events of May 22, so that the real circumstances of the service could be determined. I responded on that same day, May 30, pointing out the concerns we had with counsel's curt explanation that the fault lied with the post office. I noted the normal time to obtain mail from her offices was not eight days, and I noted that this

DECLARATION OF
J. CHRISTOPHER LYNCH - 5

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

1 discovery was not simultaneously emailed as other discovery had been. I requested that a sworn Declaration from the un-named assistant would go a long way toward us accepting the explanation as the truth. This email is attached at Exhibit F.

14. I assumed that the un-named assistant would either (i) be quite willing to provide a detailed declaration (assuming the document was actually served on May 22), or (ii) that the request would force the issue and expose that perhaps it was not actually served on May 22, and the assistant would not be willing to provide a detailed declaration to support Ms. VanderMay's purported May 22 Certificate of Service.

15. If the document had actually been served on May 22, then I expected a declaration that included recollection of the attorney signing the document on that date, the envelope being prepared and stamped on that date, some explanation of how the firm's mail service worked, whether it was picked up by USPS or dropped off at USPS, and at what time. I assumed if it had actually been served on May 22 that this declaration would talk about the fate of other mail sent at the same time from this firm – i.e. presumably, if this document took six days to get a postmark, then others did too. In other words, I assumed there might be an explanation of what other mail from the VanderMay firm from May 22, 2014, met the same fate. Or if the fault were with a particular box or office, maybe there would have been other users of the same USPS box or office that experienced the fate of this six day delay. A six day delay in the mail could affect many people and important matters such as bills and contracts and rent and the like and might even

DECLARATION OF
J. CHRISTOPHER LYNCH - 6

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

1 be local news in Salem. But no such declaration of the un-named assistant was
2 provided.

3     16.    On Monday, June 2, 2014, I received a telephone call from Carl
4 Crowell, who stated he was "non-appearing" counsel for Elf-Man, LLC. I spoke
5 with Mr. Crowell for 44 minutes. He told me that Ms. VanderMay was going to
6 withdraw from the matter and that he would attend to the urgent issues which he
7 asked me to identify for him. I identified the postmark discrepancy as one of the
8 urgent issues. I identified that a Declaration of the person who actually served the
9 document would be helpful in resolving the substantive discrepancy. Mr. Crowell
10 wrote me an email after the call on June 2, 2014, and asked for a copy of my letter
11 to counsel about the postmark issue "and I will see that it is addressed."

12     17.    On that same June 2, 2014, I replied to Mr. Crowell and provided my
13 correspondence with Ms. VanderMay on the postmark issue as he requested. A
14 copy of this email redacted to eliminate confidential material is attached as Exhibit
15 G. This email explained the substantive importance of the Certificate of Service
16 issue and demanded the discovery or the privilege logs:

> The APMC discovery is important. Please review the "prezi" presentation of Mr. Gerephil Molina of APMC Cebu about which we became aware after counsel gave us the implausible explanation under RFP #15. This 700 page expose seems to explain the back office of these matters -- APMC doing the uploading, preparing the pleadings, doing the discovery, all from Germany or the Philippines. None of this can be privileged as plaintiff claims. And the May 22 Declaration of Service vs the May 28 postmark is critical on this point. If the objections are waived, then we expect the documents immediately. If the objections are not waived, then we expect the privilege log

DECLARATION OF
J. CHRISTOPHER LYNCH - 7

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

|   |   |
|---|---|
| 1 | immediately and our first order of business will be our required LR 37 conference on the production. |
| 2 | Mr. Crowell has not again contacted me about the Elf-Man case to provide |
| 3 | any explanation of the postmark or to discuss production of the documents or the |
| 4 | privilege log. No Declaration of Ms. Vandermay's assistant has been provided. |
| 5 | 18. Even though I had written to Mr. Crowell on June 2, 2014, Ms. |
| 6 | VanderMay replied to me on June 3, 2014: |

> Our office practice for outgoing mail is as follows: mail that is ready by the time of our postal delivery is given to our mail carrier and mail that is ready later in the day is taken to a mailbox by one of our office staff. The location of the box varies depending upon what other delivery assignments the staff person has on a particular day.

No declaration of the un-named assistant was provided, and no details about the events (or non-events) of May 22 were provided, like what mailbox was used and what other mail met the similar fate. The requested privilege log was also not provided.

19. On that same date, June 3, 2014, Ms. VanderMay filed her Motion to Withdraw citing ethical differences with "plaintiff's representatives." ECF No. 55 at page 2. Note that the identical language is used in the Motion to Withdraw in The Thompsons Film case, Case No. 2:13-cv-00126-TOR, ECF No. 103 at page 2, a case with an entirely different plaintiff. Who are these "plaintiff's representatives" with whom plaintiff's counsel has its ethical differences? How could any new lawyer take the case and not suffer the same ethical issues?

DECLARATION OF
J. CHRISTOPHER LYNCH - 8

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

20. I remain unconvinced that the responses were served on May 22, 2014, despite Ms. VanderMay's Certificate of Service to the contrary.

21. Today, June 13, 2014, I spoke with attorney David Lowe of Seattle who told me he may become attorney for Elf-Man, LLC in this case. We spoke for 66 minutes. Mr. Lowe told me that the deposition of Mr. Lamberson scheduled for Thursday, June 19 would not happen because he could not make it. He also told me that the Fed. R. Civ. P. 30(b)(6) Deposition of Elf-Man, LLC would not happen on Friday, June 20, 2014, because Elf-Man, LLC could not make it. A copy of the 30(b)(6) Notice is attached as Exhibit H.

22. I told Mr. Lowe it was no surprise that Elf-Man, LLC would not attend the noted 30(b)(6) deposition, and it was no surprise that plaintiff never noted Mr. Lamberson's deposition for the agreed June 19, 2014 date. It is no surprise because plaintiff has no real desire to participate in the merits of this matter, they are just pretending they wish to depose Mr. Lamberson and inspect his machine. This case was filed more than 14 months ago. There has been no sincere effort to take Mr. Lamberson's deposition, just a transparent request by plaintiff for a "discovery plan" to stop defendant from discovery while plaintiff pretends to want to take Mr. Lamberson's deposition. Recall the May 9, 2014, Discovery Conference Ms. VanderMay initiated with the Court wherein plaintiff requested that all discovery be stayed until plaintiff could depose Mr. Lamberson and inspect his machine. Defendant submitted an *in camera* letter dated May 8, 2014, explaining that Mr. Lamberson's employer required him to request time off work

DECLARATION OF
J. CHRISTOPHER LYNCH - 9

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

in advance, but that we had done that and had offered several days for deposition, and that the parties had agreed to Thursday, June 19, 2014. Mr. Smith of my firm explained this to the Court in that May 9, 2014 hearing, expressly mentioning the Fed. R. Civ. P. 30(b)(6) deposition of Elf-Man, LLC for the next date. Recall that the Court denied the request to allow only plaintiff's discovery to go forward, and the Court acknowledged that taking the 30(b)(6) at the same time made sense. Now that plaintiff's "discovery plan" request has been denied by the court, it is no surprise that plaintiff has fallen silent on its representations that efficient administration of justice demands a prompt deposition of Mr. Lamberson. It is no surprise that Mr. Lowe has represented to me that Elf-Man, LLC will not appear for the noted deposition next Friday.

23. It appears plaintiff has an intractable problem: it has representatives that are apparently trying to force plaintiff's counsel into actions the counsel cannot undertake in good faith. Plaintiff has repeatedly failed to allow discovery of the basic facts of the case, and I cannot imagine how these representatives will ever "allow" such discovery in this "severed" case when there are lawsuits against hundreds of people in our state alone based on the same inadmissible evidence of an imperceptible bit harvested by an unlicensed investigator in another country from an IP address but with no corroboration that any identifiable person sent the imperceptible bit. For example, even if the Court were to grant our pending Motion to Compel the deposition of the German investigators in Spokane, ECF No. 50, we sincerely doubt the "plaintiff's representatives" would be cooperative about

DECLARATION OF
J. CHRISTOPHER LYNCH - 10

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

compliance with the Order, given the reluctance to date to comply with discovery requests and the Court's Order, ECF No. 31, to explain the relationship with the investigators. On behalf of Mr. Lamberson, we respectfully request that the Court Order plaintiff to comply with discovery, award costs and attorneys fees. We also respectfully request that plaintiff's case be dismissed with prejudice, and that Mr. Lamberson be declared the prevailing party such that he can pursue costs, attorney's fees and monetary sanctions under 17 U.S.C. §505, 28 U.S.C. §1927, and Fed. R. Civ. P. 11.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED this 13th day of June, 2014, in Spokane, Washington.

LEE & HAYES, PLLC

By: *s/ J. Christopher Lynch*
J. Christopher Lynch, WSBA #17462
601 W. Riverside Avenue, Suite 1400
Spokane, WA 99201
Phone: (509) 324-9256
Fax: (509) 323-8979
Email: chris@leehayes.com

*Counsel for Defendant Ryan Lamberson*

DECLARATION OF
J. CHRISTOPHER LYNCH - 11

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

# CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of June, 2014, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Maureen C. VanderMay        efile@vandermaylawfirm.com

LEE & HAYES, PLLC

By: *s/ J. Christopher Lynch*
    J. Christopher Lynch, WSBA #17462
    601 W. Riverside Avenue, Suite 1400
    Spokane, WA 99201
    Phone: (509) 324-9256
    Email: chris@leehayes.com

DECLARATION OF
J. CHRISTOPHER LYNCH - 12

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

# EXHIBIT B

DECLARATION OF
J. CHRISTOPHER LYNCH - 28

**From:** Chris Lynch
**Sent:** Monday, April 21, 2014 3:09 PM
**To:** Chris Lynch; elfmanwa@vandermaylawfirm.com
**Subject:** ███████████████

Ms. VanderMay:

████████████████████████████████████████████████████████████████████ Here is Mr. Molina's 700 page expose of APMC and its Philippines back office.  We are surprised you are surprised, ████████████████████████ Mr. Molina's explanation both appear to show that your firm may have been hired by APMC, not Elf-Man LLC.  http://prezi.com/au9es8zrsnm1/themanako123/

Here are Mr. Lamberson's Amended Initial Disclosures to include Messrs Achache and Molina as witnesses (we already had Ms. Romanoff listed.)  We have also provided these by USPS.

We also added two exhibits:

1. Mr. Molina's BPO Cebu explanation of APMC.  Another of our favorite lines from Mr. Molina's explanation: "APMC stays in the background where they are invisible, but we [APMC] are the center (i.e. 'we make things happen.')"

2. A list of the Vision Films movies uploaded to bittorrent by "Hero Master."  Turns out the allegations at paragraph 45 of our Second Amended Answer, Affirmative Defenses and Counterclaims were just the tip of the iceberg.  Not only did "Hero Master" initially seed *Elf-Man* and *Blood Money* before their public release, he/she also uploaded the majority of the Vision Films movies on the "APMC/Vision Films Schedule A" prior to their public release.  So, it appears our suspicions are correct and coming to light: Vision Films uploads the movies and then Vision Films hires APMC to track and sue everyone who takes the bait.  You said our allegations of "barratry" were scandalous, but it appears they are true.

We are still waiting for a revised explanation to the one provided regarding the relationship of the "investigators" to *Elf-Man*.  Our letter dated April 16, 2014 in this regard is attached.  You say we have presented "nothing" to support our claim, so maybe you missed the six numbered detailed points starting at number 3 on page 2 of the April 16 letter.  Plus, now that we have Mr. Molina's BPO Cebu explanation, it seems your firm's April 14 explanation of the "paperless" engagements of Crystal Bay, Inc. (sic, actually Crystal Bay Corporation) and Mr. Macek must be inaccurate, especially since Mr. Molina's explanation indicates "the BPO Cebu office will be receiving these declarations from Daniel Macek."  "These declarations" are the Declarations to Support Motions for Expedited Discovery – the ones Mr. Molina's explanation says are to be included in every case, but which are missing from the ED WA and WD WA *Elf-Man* cases.  We think Elf-Man LLC is in a difficult position regarding the explanation provided the court, compared to Mr. Molina's explanation, especially since your firm will have to address the truth of the relationship in its reply brief re the

1

DECLARATION OF
J. CHRISTOPHER LYNCH - 29

Noerr-Pennington issues (and the impending discovery.) We are prepared to move to submit Mr. Molina's entire explanation as a sur-reply.

Tomorrow, we will be sending a new set of discovery directed at the relationship/correspondence of APMC to the lawyers of record for the *Elf-Man* cases. If we understand Mr. Molina's explanation correctly, it appears that your law firm communicates directly with APMC's BPO Cebu. The corporate disclosure statement required by our court does not include any disclosure of APMC or BPO Cebu or Vision Films, so we cannot imagine how Elf-Man LLC could claim your law firm's communications with APMC and its BPO Cebu are privileged. Please be prepared that we will seek full discovery of your firm's communications (and the Crowell firm's communications) with APMC/BPO Cebu and its "legal team." If you have some explanation how these could be privileged communications, we would like to hear it now before we serve this discovery tomorrow.

Your client's house of cards has fallen. As Mr. Molina's explanation shows, APMC's entire business model is regrettably based on two faulty assumptions: (i) that capturing one uploaded packet from a swarm member equals evidence of infringement, even if uncorroborated, and (ii) that these single wispy captured packets can somehow be admissible evidence, despite the foreign un-licensed investigator's direct contingency interest in turning the data into a judgment. All of the rest – i.e. APMC's "sales team" trying to sell the data, APMC's litigation writing services from the Philippines, APMC's mistakes about the owners of the exclusive rights, APMC's lack of understanding of *Righthaven*, the sideline of South Dakota's delinquent Crystal Bay Corporation, etc. are just icing on the huge mess of a cake in which your client finds itself with the current state of our ongoing investigation.

We think Judge Rice will be quite interested in the truth of APMC's role in selling data and packaged defective lawsuits against thousands of innocent people. APMC's business model is not lawful, especially in the post-*Righthaven* world, and opacity about APMC's existence and its relationship to the supposed real party in interest does not make the situation any better.

███████████████████████████████████████████████████████████

███████████████████████████████████████████ so please consider this information:

1. Mr. Lamberson didn't copy the work.
2. Your client has no admissible evidence that Mr. Lamberson copied anything. For example, we think the response to RFP #12 is a hoot: Apparently, Mr. Lamberson copied thousands of works from 11/25/12 to 12/23/12 – apparently, he volitionally sought and copied numerous works in German, and Dutch, and Mandarin, and French, and Korean, and Russian, and Spanish, and Italian, and Greek, and Japanese. Mr. Lamberson is an interesting person, but is not multi-lingual. We told you about Mr. Lamberson's computer in discovery, so it should come as no surprise that it lacks the storage capacity to handle even one day of the copying alleged in response to RFP #12 at an alleged rate of over 100Gb per day. Another amusing example, the geo-location of the PCAP data you gave us indicates the request by the "investigator" for the packet from the IP address associated with Mr. Lamberson shows that the investigator's request came from an office building in Amsterdam, and the list of works allegedly infringed includes "Netherlands Top 40." Mr. Lamberson loves music, but does not listen to the Netherlands Top 40 – but maybe the APMC person in Amsterdam does.
3. You don't know what was captured by the one-second upload – it might be the disclaimed portions of the work.
4. Vision Films appears to own the exclusive distribution rights – the right implicated by the investigator uploading the one bit. But the time to amend to add parties is passed.
5. Vision Films appears to be seeding its own work. Each (unknown, unpopular) work on Schedule A was uploaded by the same person (Hero Master) prior to its public release. We will undertake discovery as to this Hero Master once we see how Vision Films intends to comply with our first subpoena.

2

DECLARATION OF
J. CHRISTOPHER LYNCH - 30

6. APMC is not "retaining" CBC under a paperless/termless relationship. The explanation makes no sense as our 4/16 letter demonstrates.
7. APMC may not have US licensed counsel preparing its pleadings.
8. APMC is selling testimony on a contingency that you say is "withdrawn" but without any explanation of what the relationship is or was.
9. We think the judge will force your client to present its witnesses in Spokane for deposition, and we cannot imagine the judge requiring us to pay these witnesses anything. Even if we never depose them, we cannot imagine how Messrs Patzer and/or Macek could ever offer any admissible evidence to our court when they do come to Spokane in the summer of 2015 for the jury trial.
10. Does your client(s) understand the risk of Fogerty v. Fantasy? We must admit we were a little worried at first when considering a money judgment against Elf-Man LLC that might not get paid, but now we see APMC behind the scenes. For example, we see APMC/New Alchemy has over 25 posted job listings in Cebu for technicians and administrative staff and the like, so it must have some resources to meet the inevitable defense attorneys fees and sanctions judgments it will face in this case.
11. Does your client(s) really want to undertake discovery on all of these entirely relevant points? I am certain you can sense our tenacity and that we have no reason to back down. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ or we complete discovery, go to trial and win the fees. Why would your client choose the latter?
12. We could go on. If for some reason this "information" is not enough to help you formulate a settlement recommendation – just let us know and we can provide more.

We have tried to be patient as your law firm has avoided discovery and the merits of the lawsuit. But our patience is over. Mr. Lamberson is innocent and the canned Philippines lawsuit your client bought is not one that comports with the factual and legal investigatory requirements of Rule 11. Mr. Molina's explanation exposes APMC's entire suit-selling scam. Hero Master's prolific but signature uploading exposes Vision Films' reason for its APMC agreement. Elf-Man LLC may not have known of any of this, but someone did.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ unless you can explain how your client could possibly prevail, we intend to continue to engage in discovery to reveal the truth about this case.

Thank you.

3

DECLARATION OF
J. CHRISTOPHER LYNCH - 31