**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

BODYGUARD PRODUCTIONS, INC., ET AL.,

Plaintiffs,

v.

RCN TELECOM SERVICES OF MASSACHUSETTS, LLC and RCN TELECOM SERVICES, LLC,

Defendants.

No. 3:21-cv-15310-FLW-TJB

ORAL ARGUMENT REQUESTED

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Edward F. Behm, Jr.
ARMSTRONG TEASDALE LLP
Attorney I.D. No. 017972002
2005 Market Street
29th Floor, One Commerce Square
Philadelphia, PA 19103
(267) 780-2000
(215) 405-9070 (fax)
ebehm@atllp.com

*Attorney for Defendants RCN Telecom Services of Massachusetts, LLC and RCN Telecom Services, LLC*
*[additional counsel on signature block]*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................ii

I. Plaintiffs have not plausibly alleged direct copyright infringement by an RCN subscriber. ....................1

II. Plaintiffs have not plausibly alleged direct infringement of their reproduction rights. ....................5

III. Plaintiffs have not plausibly alleged contributory copyright infringement. ....................6

IV. Plaintiffs have not plausibly alleged that RCN engaged in any conduct supporting vicarious liability for copyright infringement. ....................10

V. Plaintiffs have not plausibly alleged that RCN induced, caused, or materially contributed to any alleged Section 1202 violation. ....................13

VI. Plaintiffs fail to identify any authority for injunctive relief as anything more than a remedy, not a cause of action. ....................15

CERTIFICATE OF SERVICE ....................18

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ........................................ 7–8, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................ 5

*Bowers v. Reece & Nichols Realtors, Inc.*,
No. 2:19-cv-2094, 2020 WL 2992086 (D. Kan. June 4, 2020) ........................................ 10

*Chruby v. Kowaleski*,
534 F. App'x 156 (3d Cir. 2013) ........................................ 15

*Cobbler Nevada LLC v. Gonzales*,
901 F.3d 1142 (9th Cir. 2018) ........................................ 2–4

*Cobbler Nevada, LLC v. Gonzales*,
No. 3:15-cv-866, 2016 WL 3392368 (D. Or. June 8, 2016) ........................................ 3

*David v. CBS Interactive Inc.*,
No. 2:11-cv-9437, 2012 WL 12884914 (N.D. Cal. July 13, 2012) ........................................ 5

*Ellison v. Robertson*,
357 F.3d 1072 (9th Cir. 2004) ........................................ 10–11

*Gordon v. Nextel Commc'ns & Mullen Adver., Inc.*,
345 F.3d 922, 925–26 (6th Cir. 2003). ........................................ 14

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300, 320 n.18 (3d Cir. 2010) ........................................ 2

*In re Napster, Inc. Copyright Litig.*,
No. 3:00-md-1369, 2001 WL 36593841 (N.D. Cal. July 9, 2011) ........................................ 5

*Leonard v. Stemtech Int'l Inc*,
834 F.3d 376 (3d Cir. 2016) ........................................ 1

*Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*,
545 U.S. 913 (2005) ........................................ 7–9

*Packingham v. N. Carolina*,
137 S. Ct. 1730 (2017) ....................................................................................9

*Perfect 10, Inc. v. CCBill LLC*,
488 F.3d 1102 (9th Cir. 2007) ..........................................................................8, 10

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
464 U.S. 417 (1984) ........................................................................................7–9

*Sony Music. Entm't v. Cox Commc'ns, Inc.*,
426 F. Supp. 3d 217 (E.D. Va. 2019) ...............................................................3

*Venice PI, LLC v. Huseby*,
No. 2:17-cv-1160, 2019 WL 1572894 (W.D. Wash.) ..........................................4

*UMG Recordings, Inc. et al. v. Bright House Networks, LLC*,
No. 8:19-cv-710, 2020 WL 3957675 (M.D. Fla. July 8, 2020)....................11–13

*UMG Recordings, Inc. v. RCN Telecom Servs., LLC*,
No. 3:19-cv-17272, 2020 WL 5204067 (D.N.J. Aug. 31, 2020)....................3, 10

*UMG Recordings, Inc. v. WOW Commc'ns Networks, LLC*,
384 F. Supp. 3d 743 (W.D. Tex. 2019) ..............................................................3

*United States ex rel. Silver v. Omnicare, Inc.*,
No. CV 11-1326, 2020 WL 7022664 (D.N.J. Nov. 30, 2020) .............................1

**Statutes**

17 U.S.C. §§ 512 ..............................................................................................15

17 U.S.C. § 1201 ..............................................................................................13

**Other Authorities**

S. Rep. No. 105-190 ......................................................................................11–12

Plaintiffs have failed to state a claim against Defendants RCN Telecom Services of Massachusetts, LLC and RCN Telecom Services, LLC ("RCN") for secondary copyright infringement or for secondary liability under the DMCA. Ultimately, Plaintiffs' 200+ paragraph Amended Complaint amounts to little more than "RCN provided Internet access to subscribers accused, without evidence, of having committed copyright infringement." There is no legal, factual, or equitable reason why RCN's provision of Internet access, which has a multitude of perfectly legal, non-infringing uses, should subject it to the secondary liability Plaintiffs seek. The Court should dismiss Plaintiffs' claims with prejudice under Rule 12(b)(6).

## I. Plaintiffs have not plausibly alleged direct copyright infringement by an RCN subscriber.

Plaintiffs do not dispute that, to state a claim against RCN for secondary copyright infringement, they must allege underlying acts of direct copyright infringement. *See, Leonard v. Stemtech Int'l Inc,* 834 F.3d 376, 386 (3d Cir. 2016). Plaintiffs rely on Paragraphs 83–91 of their Amended Complaint, as well as new allegations improperly set out in a declaration for the first time with their response brief, to claim they have met this burden. None of these allegations are sufficient.

The Court should disregard the new attorney declaration submitted by Plaintiffs. *See* Decl. of K. Culpepper (ECF No. 30-1). A plaintiff may not raise new allegations for the first time in response to a motion to dismiss. *See United States ex rel. Silver v. Omnicare, Inc.*, No. 1:11-cv-1326, 2020 WL 7022664, at *5 (D.N.J.

Nov. 30, 2020) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citations omitted). The only relevant allegations are those set out in Plaintiffs' Amended Complaint. *Id.*

If anything, Plaintiffs' declaration is a tacit admission that the Amended Complaint is deficient—namely, for failure to plead "something more" than merely identifying an IP address "to create a reasonable inference that a subscriber is also an infringer." *See Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1145 (9th Cir. 2018). For example, Plaintiffs' counsel now purports to vouch for the accuracy of materials referenced in the Complaint (ECF No. 30-1, ¶¶ 13–16), adds new allegations regarding purported copyright management information (*id.* at ¶ 23), and alleges that RCN's Internet Access Agreement makes its subscribers responsible for any use (known or unknown) of their Internet service (*id.* at ¶ 2). If these allegations are necessary, Plaintiffs were obligated to include them in their Amended Complaint.

More to the point, however, even including the improper declaration, Plaintiffs' allegations are still deficient. Contrary to Plaintiffs' arguments, *Cobbler* does not create a heightened pleading standard. Rather, *Cobbler* simply explains that an allegation of direct copyright infringement is not "plausible on its face" and does not "raise a right to relief above the speculative level" if it lacks factual allegations linking activity at an IP address to the alleged infringer. *Cobbler*, 901

F.3d at 1146–47; *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 320 n.18 (3d Cir. 2010) (explaining "[c]ontext matters in notice pleading," and "[s]ome claims will demand relatively more factual detail to satisfy this standard[.]").

That is precisely the case here. Plaintiffs' direct infringement allegations (*e.g.*, ECF No. 22, ¶¶ 74, 93–95, 124; ECF No. 30, pp. 12-15) merely identify IP addresses purportedly owned by RCN. Plaintiffs do not allege any facts plausibly showing that the people who engaged in the alleged activity at those IP addresses are RCN subscribers. (ECF No. 28-1, pp. 9–12). *See Cobbler Nevada, LLC v. Gonzales*, No. 3:15-cv-866, 2016 WL 3392368, at *1, *3 (D. Or. June 8, 2016) ("While it is *possible* that the subscriber is also the person who downloaded the movie, it is also possible that a family member, a resident of the household, or an unknown person engaged in the infringing conduct.") (emphasis in original).

Plaintiffs are wrong to suggest that courts do not require plaintiffs to plead "something more" to identify direct infringers in the context of copyright infringement claims against ISPs. (ECF No. 30, pp. 19–21). Plaintiffs' cited cases addressed whether a *different* holding in *Cobbler*—regarding the conduct necessary to show contributory copyright infringement—applies to an ISP. *See UMG Recordings, Inc. v. WOW Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 767 n.6 (W.D. Tex. 2019); *UMG Recordings, Inc. v. RCN Telecom Servs., LLC*, No. 3:19-cv-17272-MAS-TJB, 2020 WL 5204067, at *10 n.5 (D.N.J. Aug. 31, 2020). *Sony*

*Music. Entm't v. Cox Commc'ns, Inc.*, 426 F. Supp. 3d 217, 235–36 (E.D. Va. 2019). None of those cases addressed how to adequately plead underlying direct infringement. *Id.*

In fact, in one case Plaintiffs rely on, the court ultimately dismissed the contributory copyright claim because the plaintiff failed to "plead 'something more' about the *subscriber*, not about his or her IP address." *Venice PI, LLC v. Huseby*, No. 2:17-cv-1160, 2019 WL 1572894, at *2 (citing *Cobbler*, 901 F.3d at 1146–47) (emphasis added). Like here, allegations involving only the activity associated with an IP address fail to show the "something more" required by *Cobbler*: "Continual or prolonged use of an IP address is not synonymous with a subscriber's activity or knowledge; the same pattern would exist if a tenant, roommate, child, or hacker engaged in the alleged infringement without the subscriber realizing it, or if the Internet access was not password protected and strangers could connect via the IP address." *Id.*

Finally, the Court should reject Plaintiffs' attempt to rely on RCN's terms of use, which Plaintiffs appear to cite for the proposition that RCN subscribers are liable for any acts of copyright infringement committed using their internet connection. (ECF No. 30, pp. 18–19; ECF No. 30-1, ¶ 2). As an initial matter, the Court should disregard these allegations because they appear nowhere in Plaintiffs' Amended Complaint. But even if they had been included, this still would not save

Plaintiffs' claims. It would only mean that Plaintiffs have alleged that RCN should be tertiarily liable for this alleged infringement—secondarily liable for its subscribers' secondary liability. The Copyright Act does not allow for tertiary liability. *See, e.g.*, *David v. CBS Interactive Inc.*, No. 2:11-cv-9437, 2012 WL 12884914, at *4 (N.D. Cal. July 13, 2012) ("The courts have yet to find contributory liability based on a tertiary actor's conduct."); *In re Napster, Inc. Copyright Litig.*, No. 3:00-md-1369, 2001 WL 36593841, at *2 (N.D. Cal. July 9, 2011) (same).

Because Plaintiffs fail to plausibly allege that any RCN subscriber committed direct copyright infringement, Plaintiffs' Counts I and II should be dismissed.

## II. Plaintiffs have not plausibly alleged direct infringement of their reproduction rights.

Plaintiffs claim that RCN subscribers also infringed Plaintiffs' right of reproduction. (ECF No. 30, p. 17; ECF No. 22, ¶ 56). However, Plaintiffs fail to plead any factual allegations to show that Plaintiffs obtained protected material using RCN's network. Based on the allegations in the Amended Complaint, one could just as easily infer, for example, that the file was downloaded using a different ISP or a cellphone service provider, that it was downloaded over a public WiFi network, or that it was obtained from a USB drive. Plaintiffs' allegations are consistent with any of those possibilities, and they have therefore failed to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility

and plausibility of entitlement to relief."). Plaintiffs must allege more than "a sheer possibility" that the works were obtained using RCN's network. *Id.* The Court should dismiss all claims of direct infringement of Plaintiffs' reproduction rights.

## III. Plaintiffs have not plausibly alleged contributory copyright infringement.

RCN moved to dismiss Plaintiffs' contributory infringement claim for failure to allege both the requisite knowledge of infringement and the requisite conduct to support contributory liability. (ECF No. 28 at 13–16). Plaintiffs' response fails to show that Plaintiffs' allegations are sufficient in either respect.

It is clear from the face of Plaintiffs' Amended Complaint that RCN only has knowledge, at most, of conclusory *allegations* of direct copyright infringement. Plaintiffs allege no facts plausibly showing knowledge of specific instances of infringement, merely of alleged receipt of conclusory complaints from Maverickeye. (ECF No. 22, ¶ 43; ECF No. 22-4, pp. 5–8; ECF No. 30, p. 13).

Plaintiffs are also wrong to attempt to compare this case to other copyright cases involving ISPs, which Plaintiffs baldly assert involved complaints that "sometimes included less information" than the complaints at issue in this case. (ECF No. 30, pp. 22–23). Their citations do not support that assertion. For example, Plaintiffs repeatedly cite this Court's opinion in a separate contributory infringement case against RCN, yet that case involved different allegations, a different third-party

investigator, different types of notices, and a fundamentally different notification system. *RCN*, 2020 WL 5204067, at *2.

What matters here is the sufficiency of the allegations *in this case*. There is nothing in Plaintiffs' Amended Complaint to plausibly show RCN had actual, verifiable knowledge of specific instances of copyright infringement. *See, e.g.*, *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001) ("[F]or the operator to have sufficient knowledge, the copyright holder must provide the necessary documentation to show there is likely infringement.") (cleaned up)).

Second, under the Supreme Court's controlling contributory infringement decisions, a defendant who merely provides a service with substantial non-infringing uses cannot be liable for contributory infringement absent evidence of affirmative steps to foster direct infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 936–37 (2005); *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 441–42 (1984). Contributory liability is limited to parties who (1) intentionally induce infringement through specific acts or (2) distribute products or services that have no legitimate purpose apart from their use to infringe copyright. Plaintiffs' allegations fail to satisfy that standard. (ECF No. 28-1, pp. 13–16). RCN recognizes that certain district court decisions have allowed contributory infringement claims against ISPs to proceed; respectfully, however,

RCN submits that those non-binding decisions cannot be squared with *Sony* and *Grokster* and should not be followed.

Plaintiffs also offer a different standard, proposing to hold ISPs contributorily liable if they "have knowledge of the specific infringing activity yet fail to take simple measures to stop it." (ECF No. 30, p. 24). This standard cannot be good law to the extent it is inconsistent with *Sony* and *Grokster*, nor does it make sense to apply this standard to an ISP. Indeed, the standard was developed to address claims against defendants that directly control access to specific content on the Internet. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (addressing claims against "computer system operators" like Google, who operate or control access to allegedly infringing content on websites). In contrast, there is no infringing material available using RCN's "system." RCN does not operate a system that determines what content is available over the Internet and does not have the ability to remove infringing content from Internet sources. [1] *Compare with Napster*, 239 F.3d at 1021 (contributory liability is appropriate where a system operator "learns of specific infringing material available on his system and fails to purge such material from the system").

Instead, RCN offers access to the Internet as a whole, a service that plainly has a multitude of legitimate purposes. There are no "simple measures" RCN can

take to prevent the infringement of copyrighted works. The only option identified by Plaintiffs—terminating a subscriber's internet access entirely—is not simple at all. This is an exceedingly drastic measure, given that so many people rely on the Internet for work, for school, and as a main hub for social activity. *See, e.g.*, *Packingham v. N. Carolina*, 137 S. Ct. 1730 (2017) (recognizing a First Amendment right to access social media). The critical importance of Internet access is highlighted by the moratoria on internet terminations during the Covid-19 pandemic. *See, e.g.*, Maryland Executive Order No. 20-07-31-01.

Ultimately, Plaintiffs' argument rests on the mistaken premise that RCN's intent "can be imputed from [RCN's] knowledge of their subscribers' ongoing piracy." (ECF No. 30, pp. 23–24). That is *precisely* the argument the Supreme Court rejected in *Sony* and *Grokster*: "[J]ust as *Sony* did not find intentional inducement despite the knowledge of the VCR manufacturer that its device could be used to infringe, **mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability**." *Grokster*, 545 U.S. at 937 (emphasis added). "The inducement rule, instead, premises liability on **purposeful, culpable expression and conduct**[.]" *Id.* (emphasis added).

For the same reason, Plaintiffs are wrong to suggest that there is a separate, lower standard for contributory liability based on "material contribution" to infringement. If such a standard existed, *Sony* and *Grokster* would be meaningless,

because a plaintiff would never need to attempt to prove inducement if it could instead make an easier showing of material contribution. *See Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring) ("Liability [for contributory infringement] under our jurisprudence may be predicated on actively encouraging (or inducing) infringement through specific acts (as the Court's opinion develops) ***or*** on distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses.") (emphasis added).

Because Plaintiffs do not plausibly allege that RCN encouraged or induced infringement through specific acts, and because RCN's Internet service is indisputably capable of substantial noninfringing uses, Plaintiffs have failed to state a claim for contributory copyright infringement.

## IV. Plaintiffs have not plausibly alleged that RCN engaged in any conduct supporting vicarious liability for copyright infringement.

The vicarious liability inquiry turns on "whether the infringing activity constitutes a **draw** for subscribers, not just an added benefit." *Bowers v. Reece & Nichols Realtors, Inc.*, No. 2:19-cv-2094, 2020 WL 2992086, at *8 (D. Kan. June 4, 2020) (emphasis added) (citations omitted). Plaintiffs' own cited case, *Perfect 10, Inc.*, found no vicarious liability when infringement was not the "draw" of the defendant's service—even if it was an "added benefit." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 674 (9th Cir. 2017). "Draw" is the "central question." *Ellison v. Robertson,* 357 F.3d 1072, 1079 (9th Cir. 2004).

Nevertheless, Plaintiffs rely on Judge Shipp's decision in *UMG Recordings, Inc. v. RCN Telecom Servs., LLC*, to claim that Plaintiffs have met their pleading burden. No. 3:19-cv-17272-MAS-TJB, 2020 WL 5204067, at *2 (D.N.J. Aug. 31, 2020). Yet the Court in that case expressly premised its conclusion on "the lack of binding or persuasive authority on the issue of direct financial benefit." *Id.* at *12.

Respectfully, RCN submits that there is very persuasive authority on this issue. In enacting the Digital Millennium Copyright Act, Congress admonished that services like ISPs would not ordinarily satisfy the direct financial benefit criteria:

> In general, a service provider conducting a legitimate business would not be considered to receive a ''financial benefit directly attributable to the infringing activity'' where the infringer makes the same kind of payment as non-infringing users of the provider's service. Thus, receiving a one-time set-up fee and flat periodic payments for service from a person engaging in infringing activities would not constitute receiving a ''financial benefit directly attributable to the infringing activity.''

S. Rep. No. 105-190, at 44–45. *See also Ellison*, 357 F.3d at 1079. The only financial benefit that Plaintiffs allege are flat fees for varying speeds of internet service—the cost of which is the same for a subscriber, whether they infringe or not. (ECF No. 22, ¶¶ 152–154. Moreover, the value of RCN's service is to provide access to the internet generally—not to provide access to or host specific infringing content (unlike other services, such as Napster, whose primary purpose was to provide access to infringing content). *See, e.g.*, *Napster*, 239 F.3d at 1021.

In *Bright House*, a recent case also involving vicarious infringement claims against an ISP, the court concluded that the direct financial interest standard requires that "the availability of infringing material be the **primary customer draw** to the service." *UMG Recordings, Inc. et al. v. Bright House Networks, LLC*, No. 8:19-cv-710, 2020 WL 3957675, at *4 (M.D. Fla. July 8, 2020) (emphasis added). The court studied the origins of vicarious copyright liability, dismissing the case because "**the very success of the defendant's venture must depend on the infringing activity**," and the plaintiffs had failed to allege facts to meet this burden. *Id.* (emphasis added).

Plaintiffs have likewise failed to meet this burden. The Amended Complaint lacks plausible allegations detailing how RCN profited directly from the alleged infringement, which renders any financial benefit from the alleged infringement attenuated, incidental, and not "direct." Plaintiffs allege that the fastest tier, or "gaming internet," allows for "every person in your home" to "be doing something on every device – all at once and faster than ever." (ECF No. 22, ¶¶ 153–155).

Offering different speeds of network access to *all* content on the internet, "where the infringer makes the same kind of payment as non-infringing users," S. Rep. No. 105-190, at 44–45—is precisely the sort of legitimate business service Congress intended to protect from the threat of vicarious liability. RCN's interest in flat monthly fees is not the same as a financial benefit derived directly from

infringing activity. *See id.*; *Bright House*, 2020 WL 3957675, at *4. To hold otherwise would be inconsistent with the requirement of a *direct* financial benefit, and would improperly "impose liability on every ISP" because the infringing content in question can be accessed over every ISP's network. *See Bright House*, 2020 WL 3957675, at *6 (citations omitted). Because Plaintiffs fail to allege facts showing that the availability of infringing content was a "draw" to RCN's service or that RCN derived any direct financial benefit from such infringement, the Court should dismiss Plaintiffs' vicarious infringement claim.

## V. Plaintiffs have not plausibly alleged that RCN induced, caused, or materially contributed to any alleged Section 1202 violation.

None of the cases cited in Plaintiffs' Opposition Brief found a defendant secondarily liable for a Section 1202 DMCA violation, and RCN is not aware of any other case finding a defendant secondarily liable for a Section 1202 DMCA violation. For the reasons set forth in RCN's Motion to Dismiss, a claim for secondary liability under Section 1202 is inconsistent with the language and purposes of that section. *See also* 17 U.S.C. § 1201(c)(2) ("Nothing in this section shall enlarge or diminish vicarious or contributory liability for copyright infringement in connection with any technology, product, service, device, component, or part thereof.").

Even if secondary liability were a viable theory, however, Plaintiffs have still failed to state a claim. First, Plaintiffs fail to offer authority demonstrating what the

applicable standard is. Instead, Plaintiffs' conclusory allegations merely parrot the standard for contributory copyright infringement, as well as a vicarious liability standard a court suggested might apply (but did not actually apply) in the Section 1202 context. (ECF No. 22, ¶¶ 194–196); *see also Gordon v. Nextel Commc'ns & Mullen Adver., Inc.*, 345 F.3d 922, 925–26 (6th Cir. 2003). This is insufficient to show that Plaintiffs have a viable secondary Section 1202 claim against RCN.

Second, with respect to alleged contributory liability, Plaintiffs fail to allege any *facts* to show that RCN (as opposed to alleged RCN subscribers) induced, caused, or materially contributed to the allegedly false removal or alteration of copyright management information ("**CMI**") under Section 1202. (ECF No. 22, ¶¶ 194–196). Plaintiffs do not allege that RCN engaged in any affirmative conduct that impacted whether individual internet users removed or altered CMI. *Id.* Plaintiffs allegations are entirely conclusory, and their claim should be dismissed. *See id.*

Third, with respect to alleged vicarious liability as in *Gordon*, Plaintiffs fail to allege any *facts* to show that RCN had either the right or the ability to supervise the creation of these files or the selection of these file names, or that RCN has a financial interest in the alleged alteration or removal of the CMI. (ECF No. 25 at ¶ 219). Plaintiffs have therefore failed to state a claim, even if a party can be held vicariously liable for a Section 1202 violation.

Fourth, Plaintiffs misconstrue RCN's argument in claiming that digital file names can constitute CMI. (ECF No. 30, p. 32). RCN did not argue otherwise. Rather, RCN argued—and offered supporting authority—that the file names *at issue in this case* are not CMI because Plaintiffs do not allege that those file names were originally created or distributed by Plaintiffs or anyone acting on their behalf. (ECF No. 28-1, p. 23). Even now, Plaintiffs do not contend otherwise, despite Plaintiffs' counsel's improper and self-serving declaration showing a screenshot of a legitimate copy's file name. (ECF No. 30, p. 32; ECF No. 30-2, ¶ 23).

Finally, Plaintiffs do not even attempt to respond to RCN's argument that they failed to allege the double scienter required by Section 1202. (ECF No. 28-1, p. 24). For the reasons set forth in RCN's Motion, the Court should dismiss Plaintiffs' Count IV for failure to state a claim.

## VI. Plaintiffs fail to identify any authority for injunctive relief as anything more than a remedy, not a cause of action.

Plaintiffs contend that they are seeking an injunction under 17 U.S.C. § 512(j), and not under this Court's equitable powers. Regardless of the source of the relief for this requested remedy, it is not a separate cause of action, but only a type of relief to be awarded after proving infringement. *See* 17 U.S.C. § 512(j)(1); *Chruby v. Kowaleski,* 534 F. App'x 156, 160 (3d Cir. 2013) ("an injunction is a remedy rather than a cause of action, so a separate claim for injunctive relief is unnecessary."). The Court should therefore dismiss Plaintiffs' Count III for failure to state a claim.

## CONCLUSION

While Plaintiffs request leave to amend, Plaintiffs do not offer any justification for a second attempt at amendment. Accordingly, the Court should dismiss Plaintiffs' claims against RCN under Rule 12(b)(6) with prejudice.

Dated: January 18, 2022

Respectfully submitted,

By: *Edward F. Behm, Jr.*

Edward F. Behm, Jr.
ARMSTRONG TEASDALE LLP
Attorney I.D. No. 017972002
2005 Market Street
29th Floor, One Commerce Square
Philadelphia, PA 19103
(267) 780-2000
(215) 405-9070 (fax)
ebehm@atllp.com

Richard L. Brophy*
Zachary C. Howenstine*
Margaret R. Szewczyk*
Angela B. Kennedy*
Sydney K. Johnson*
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
(314) 621-5070
rbrophy@atllp.com
zhowenstine@atllp.com
mszewczyk@atllp.com
**Admitted Pro Hac Vice*

Joseph J. Gribbin*
ARMSTRONG TEASDALE LLP
300 Delaware Avenue, Suite 210
Wilmington, Delaware 19801
(302) 824-7089
jgribbin@atllp.com
**Admitted Pro Hac Vice*

*Attorneys for Defendants RCN Telecom Services of Massachusetts, LLC and RCN Telecom Services, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of January, 2022, I caused a copy of the foregoing to be served upon all counsel of record via ECF notification.

By: *Edward F. Behm, Jr.*
Edward F. Behm, Jr.