

**CULPEPPER IP, LLLC**

ATTORNEY AT LAW

75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740

KERRY S. CULPEPPER *

TEL: (808) 464-4047
FAX: (202) 204-5181

\* ADMITTED TO PRACTICE IN VIRGINIA, HAWAI'I
  AND BEFORE THE USPTO

www.culpepperip.com
_____

PATENTS, TRADEMARKS & COPYRIGHTS

<u>Via ECF</u>

October 25, 2023

Hon. Tonianne J. Bongiovanni, U.S.M.J.
Clarkson S. Fisher Federal Building
and U.S. Courthouse
402 E. State Street, Room 2020
Trenton, New Jersey 08608

Re: *BODYGUARD PRODUCTIONS, INC., ET AL., v.  RCN TELECOM SERVICES OF MASSACHUSETTS, LLC*, 3:21-cv-15310-FLW-TJB

Dear Judge Bongiovanni,

We represent Plaintiffs.  This letter is in Reply to Defendants' Oct. 18, 2023 discovery letter and in support of our letter of July 28, 2023 on the discovery disputes.

Defendants raise the decisions of Magistrate Judge Howell of the Western District of Texas in *After II Movie, LLC v. Grande Communications Networks*, 1:21-cv-709-RP ("*Grande*") in connection with their "affiliate" Grande in support of their position.   However, the *Grande* decisions that Defendants urge this Court to adopt reject decisions of this Court and of Your Honor specifically as explained below:

(1) The Order of *Grande*, Defendants' Exhibit "3" [DE 72-3], rejected this Court's decision in *UMG v. RCN*, 3:19-cv-17272-MAS-ZNQ, Doc. #83 of 8/5/2020 that infringement notices and information concerning RCN's handling of copyright infringement prior to the 3 year lookback was relevant to RCN's safe harbor defense, RCN's knowledge of infringement by its subscribers, and RCN's capabilities with respect to Grande.

(2)  The Order of *Grande*, Defendants' Exhibit "3" [DE 72-3], rejected this Court's decision in *UMG*, Doc. #93 of 9/10/2020 that reaffirmed the 8/5/2020 decision and stated that "data regarding the number of subscribers terminated for alleged infringement versus those terminated for other reasons is probative of willfullness" with respect to Grande.

(3) The Order of *Grande*, Defendants' Exhibit "2" [DE 72-2], rejected this Court's decision in *UMG*, Doc. #93 of 9/10/2020 that that historical valuation of RCN is relevant with respect to Grande.

(4) The Order of *Grande*, Defendants' Exhibit "2" [DE 72-2], rejected Your Honor's decision in *UMG*, Doc. #247 of 5/26/2023 that ordered RCN to "produce the communications exchanged between RCN, Abry Partners, TPG Capital, and/or Stonepeak Infrastructure Partners, as well as the financial firms who worked with those entities, related to the 2016 sale of RCN from Abry Partners to TPG Capital and the 2020 sale from TPG Capital to Stonepeak infrastructure Partners" with respect to Grande.

This Court is not bound to follow out of circuit authority from another Court that completely rejects the decisions of this Court.  Nonetheless, if this Court is inclined to follow *Grande*, the Court should follow the April 26, 2023 of *Grande* that recognized that subscriber identifications are relevant to rebutting Plaintiffs' safe harbor defense when it overruled subscriber objections to disclosure. *See* Ex. "2". Accordingly, in view of *Grande*, this Court should grant Plaintiffs' request for a cable act order authorizing Defendants to disclose subscriber identifications.

Moreover, the circumstances of *Grande* illustrate the prejudice to Plaintiffs that will occur if this Court grants Defendants' request to bifurcate discovery.  Notably, Defendants are effectively getting all the discovery they want from Plaintiffs through the *Grande* case while Plaintiffs will be limited to discovery only on Defendants' safe harbor.

## 1.   Defendants fail to refute Plaintiffs' point that 17 U.S.C. §512(a) would not dispose of the case.

Defendants do not point to any language in 17 U.S.C. §512(a) or cases that supports its position that §512(a) provides a safe harbor for DMCA violations per 17 U.S.C. §1202. Defendants merely argue that "it would be nonsensical, and against the intent and the purpose of § 512(a), to hold an internet service provider liable for a DMCA violation when it has a viable safe harbor defense to infringement." Letter at p.2.  However, Defendants fail to respond to Plaintiffs' point that §1202 *has its own safe harbor* in subsection (e) which Defendants do not plead. Defendants also do not respond to Plaintiffs' argument that because §512(a) bars monetary liability but not injunctive relief, Defendants' request for bifurcation would not even dispose of the copyright infringement claims.  Rather, Defendants just vaguely allude to their upcoming summary judgment motion.

## 2.   Evidence prior to 7/2018 is relevant.

Plaintiffs set forth the evidence including publicly available stipulated judgments, YTS account information records and the demand letter to Defendants establishing that Plaintiffs did not discover Defendants' liability until 2020.  In response, Defendants commingle vicarious

liability and contributory liability to incorrectly argue that there cannot be any liability because notices did not come from Plaintiffs until Oct. 30, 2019.  Vicarious liability does not require knowledge.

Defendants incorrectly state that Plaintiffs "expressly allege that they **hired** a company called MaverickEye, or MEU…".  Letter at p3.  But, as Defendants' counsel knows from discovery in *Grande* and Plaintiffs' case against his client WideOpenWest in the District of Colorado, contractual documents between a prior law firm and MEU call for California law and expressly designate MEU as an independent agent.  *See* Ex. "3".  Accordingly, MEU cannot be a "sub-agent" as argued by Defendant.

Defendants argue that the Court would have to disregard allegations in the complaint to accept Plaintiffs' discovery rule argument.  Not true.  Firstly, the First Amended Complaint ("FAC") alleges that Plaintiffs received information from the YTS website operator and includes a certificate of authenticity dated in 2020.  Thus, the FAC supports Plaintiffs' argument.  Secondly, Plaintiffs repeat that any implication from paragraphs 83 and 113 of the FAC that Plaintiffs directly hired MEU is from inartful pleading.  But if Defendants wants to hold Plaintiffs to the allegations, the FAC does not state *when* MEU was engaged.  Accordingly, there is no inconsistency with Plaintiffs' factual assertion that they discovered Defendants' liability in 2020.

Defendants accuse Plaintiffs of outright misrepresentation for stating the fact that they did not discover RCN's liability until after they received the YTS account information.  Defendants frame this argument by emphasizing that the YTS account information *in this case* includes only one RCN subscriber.  But Defendants fail to mention that *all* the YTS account information Plaintiffs received included nearly a thousand records.  From this information at a holistic level, Plaintiffs were able to discern which ISPs failed to terminate repeat infringers.  Plaintiffs emphasize the public records include numerous lawsuits by Plaintiffs and ISPs/host providers that all feature the YTS data as a key exhibit and begin from 2020[1].

Defendants' final argument that "How RCN responded to copyright infringement complaints in 2018 and before…from other rightsholders…has absolutely no bearing on any of these issues" is incorrect.  The §512(a) safe harbor is evaluated based upon Defendants' overall policy for responding to notices, not just notices from Plaintiffs.

### 3.     The IP address lease log dispute.

Defendants focus on their disclosure of the DMCA database excerpts instead of addressing the relevancy of the IP address lease logs.  Plaintiffs have no way of knowing whether the IP

---

[1] *See, e.g., Millennium Funding, Inc. v. Wicked Tech. Ltd.*, Civil Action No. 1:21-cv-282 (RDA/TCB), 2021 U.S. Dist. LEXIS 77037 (E.D. Va. Apr. 21, 2021); *Millennium Funding, Inc. v. 1701 Mgmt. Ltd. Liab. Co.*, No. 21-cv-20862-BLOOM/Otazo-Reyes, 2022 U.S. Dist. LEXIS 55799 (S.D. Fla. Mar. 25, 2022); *Hurricane Electric, LLC, v. Dallas Buyers Club, LLC, et al.*, Case No. 4:20-cv-03813 (N.D. Cal. Aug. 19, 2020), ECF No. 1

addresses for where they sent hundreds of notices were assigned to the same subscriber during the relevant time period. Without this information, it is not possible to know if the appropriate subscriber was terminated. Plaintiffs would be left to take Defendants' word for it. But even as noted in *Grande*, the subscribers dispute that they received any of the notices that Defendants' affiliate Grande asserts it did send.

**4.      Defendants' discussions of prominent ISP copyright lawsuits disputes are relevant.**

Defendants' counsel's proposal to filter our communications about other ISP lawsuits that that refer to or discuss the DMCA safe harbor or RCN's copyright infringement policies will only lead to more discovery fights on this subject. For example, in *UMG. v. Grande*, the Plaintiffs introduced evidence that the ISP Grande had communications discussing the Cox lawsuit but in the context of changing their e-mail retention policy, i.e., destroying evidence. *See* Ex. "4". Under Defendants' counsel's proposal, internal emails where RCN employees discussed ISP lawsuits in the context of destroying similar damaging evidence would not be turned over because it would not refer to the DMCA safe harbor or RCN's copyright infringement policies.

**5.      Defendants' network monitoring practices are highly relevant.**

Defendants downplay the five technical requirements of §512(a)(1)-(5) to just whether the ISP plays an "active" role in selecting material. Defendants cannot qualify for this safe harbor if they maintain any copy of material on their network or modify the material. Many modern network monitoring techniques include reading material in transit to determine top users of bandwidth and top servers. If Defendants engage in modern network monitoring techniques, they will not be eligible for the §512(a) safe harbor. The Court should note that Defendants did not refute Plaintiffs arguments that this type of evidence has been admitted in other ISP lawsuits.

**6.      Defendants' refusal to disclose evidence of profit from pirating customers.**

Plaintiffs accept Defendant's proposal to disclose revenue from identified customers. However, Defendants characterized this proposal as contingent to the Court granting a Cable Act authorization. The Court should order Defendants to disclose the revenue it has received from the top 200 infringing IP addresses. Defendants should also be ordered to disclose how many customers it terminated for non-payment during the COVID-19 pandemic.

**7.      Defendants refuse to disclose information showing their relationship within Astound such as common officers and managers despite RCN rebranding itself as Astound.**

Plaintiffs explained the relevance and basis for this request.

**8.      Defendants fail to disclose the custodian of records.**

Plaintiffs explained the relevance and basis for this request.

**9.      *UMG* case documents are relevant.**

*UMG Recordings, Inc. et al. v. RCN Telecom Services, LLC et al.*, 3:19-cv-17272-MAS-ZNQ, D.N.J. deals with same exact issues as this case – Defendant's failure to terminate customers

despite multiple notices.   Defendants' argument that this evidence from UMG is not relevant here because Plaintiffs' agent did not send notices until 2019 is incorrect because vicarious liability does not require knowledge.

Moreover, since *UMG* was filed on Aug. 27, 2019 there is at least a one year overlap (Aug 2018-Aug 2019) between *UMG* and the present case even if the Court disagrees with Plaintiffs' contention that the discovery rule is applicable.  Defendants have not argued that it would be burdensome for them to turn over documents that they have already turned over in *UMG*.  It would appear to be burdensome for Defendants to sift through the *UMG* discovery to only produce 2018-2019 documents rather than just turning over all their production.

**10.     Defendants' disparate practices between other policies that benefit them and their DMCA policy.**

Plaintiffs explained the relevance of this evidence.  Defendants fail to argue any burden to production.

**11.     Failure to timely produce.**

Regarding RFP No. 8, Plaintiffs believe Defendants still have not even turned over any documents showing Defendant RCN Mass's state of incorporation and address despite denying that the principal address and state of incorporation of RCN Telcom service of Mass are as alleged in the complaint[2].

Sincerely,
/ksc/
Kerry S. Culpepper
kculpepper@culpepperip.com

Michael Cukor/
Michael Cukor
McGeary Cukor LLC
mcukor@mcgearycukor.com

---

[2] Defendants produced RCNAII0005145-RCNAII0010891 on 10/13/2023.  Plaintiffs are still going through these documents.