

Edward F. Behm
Direct **T** 267.780.2030  **F** 215.405.9070
ebehm@atllp.com

February 12, 2024

**VIA ECF FILING**
Hon. Tonianne J. Bongiovanni
Clarkson S. Fisher Federal Building
402 E. State Street, Room 2020
Trenton, NJ 08608

> Re: *Bodyguard Productions, Inc., et al. v. RCN Telecom Services of Massachusetts, LLC, et al.*, Case No. 3:21-cv-15310-RK-TJB – Discovery Disputes Relating to Plaintiffs' Discovery Responses

Dear Judge Bongiovanni,

We represent Defendants RCN Telecom Services, LLC and RCN Telecom Services of Massachusetts, LLC (collectively, "RCN") in the above captioned case. This discovery letter concerns Plaintiffs' deficient responses to certain discovery requests from RCN. The Court has scheduled a Status Conference for February 21, 2024, and RCN will be prepared to discuss these issues at that Status Conference. RCN believes that oral argument would assist the Court in resolving these issues, and RCN can be available for an in-person conference or teleconference at the Court's convenience.

A central issue in this case is the Digital Millennium Copyright Act ("DMCA") safe harbor for internet service providers, 17 U.S.C. § 512(a), which provides a defense to copyright infringement claims. Plaintiffs contend that to qualify for the safe harbor, RCN was obligated to permanently terminate the internet service of any subscriber about whom RCN received two copyright infringement complaints (even if those complaints were received on the same day or 5 years apart).

Against that backdrop, Plaintiffs refuse to produce documents and information that may undermine their position, such as internal communications about the safe harbor and agreements with third parties about the appropriate response to copyright infringement complaints. As detailed below, Plaintiffs do not dispute that responsive documents exist; they just refuse to produce them. Accordingly, this letter asks the Court to:

- Compel Plaintiffs to produce documents and communications in Plaintiffs' possession, custody, or control in response to RCN's Request for Production Nos. 6, 11, 12, and 24; and

- Overrule Plaintiffs' "multi-part interrogatory" objections to RCN's Interrogatory Nos. 4 and 10, and compel Plaintiffs to provide a full and complete response to Interrogatory No. 10.

### RCN's Discovery Requests and the Parties' Meet-and-Confer

Plaintiffs are a collection of 25 separate movie production and distribution companies asserting claims against RCN, an internet service provider (ISP), for secondary copyright infringement and secondary violations of the DMCA. Dkt. 78. Plaintiffs' claims are based on 50 copyrighted works ("Works in Suit"). Dkt. 78-1. Plaintiffs allege that RCN is secondarily liable because RCN, after receiving emails from Plaintiffs' agents accusing RCN subscribers of copyright infringement, did not do enough to stop its internet subscribers from infringing the Works in Suit. *See generally* Dkt. 78.

A primary defense asserted by RCN is that RCN is shielded from liability by the DMCA safe harbor codified in 17 U.S.C. § 512(a). The safe harbor gives ISPs a defense to copyright infringement claims if, among other things, they adopt a policy for terminating repeat copyright infringers "in appropriate circumstances." *See* 17 U.S.C. § 512(i)(1)(A). The relevant "repeat infringer" language from the statute is as follows:

> (i) Conditions for Eligibility—
>
> (1) Accommodation of technology—The limitations on liability established by this section shall apply to a service provider only if the service provider—
>
> (A) has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, **a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers**.

17 U.S.C. § 512(i)(1)(A) (emphasis added).

As the Court is aware, RCN has requested that discovery in this case be bifurcated, with a first phase of discovery focusing on RCN's safe harbor defense. Consistent with RCN's bifurcation request, RCN served its First Set of Requests for Production (Request Nos. 1-28) and First Set of Interrogatories (Interrogatory Nos. 1-10) on November 10, 2023, focusing on its safe harbor defense.

On December 11, 2023, Plaintiffs served responses and objections to RCN's Requests and Interrogatories. Exhibits 1 and 2, respectively. Plaintiffs' responses were deficient in many ways, including Plaintiffs' refusal to produce relevant and responsive documents and provide full answers to each Interrogatory. RCN sent an email to Plaintiffs' counsel the next day (December 12) requesting a meet and confer to discuss Plaintiffs' discovery responses. Exhibit 3. After some scheduling back-and-forth, the parties agreed to meet and confer on December 19, 2023 to discuss Request Nos. 5, 6, 9, 11, 12, and 24, and Interrogatory Nos. 1, 4, 5, 6, 7, 8, 9, and 10. *Id.*

Hon. Tonianne J. Bongiovanni
February 12, 2024
Page 3

During the December 19 meet and confer, the parties discussed certain compromises and agreed to follow-up as to several remaining disputes. Counsel for RCN sent an email to Plaintiffs' counsel on December 20, 2023 summarizing the issues and remaining disputes. Exhibit 4. On January 4, 2024, Plaintiffs' counsel responded, indicating that Plaintiffs would be standing on their objections with respect to Request Nos. 6, 11, 12, and 24. Plaintiffs' January 4 Letter also lodged new objections to Interrogatory Nos. 4 and 10 based on an assertion that these Interrogatories exceed the 25-interrogatory limit "by thousands." Exhibit 5 at 5.

On January 10, 2024, Plaintiffs served Supplemental Responses to Interrogatory Nos. 4 and 5. Exhibit 6.

Following the parties' meet and confer, and associated follow-up letters, it has become clear that the parties are at an impasse with respect to at least Request Nos. 6, 9, 11, 12, 24, and Interrogatory Nos. 4 and 10.

## **RFP No. 6**

This Request seeks documents and things, excluding copyright complaints,[1] that refer to or discuss any DMCA safe harbor. Exhibit 1 at 9. During the meet-and-confer process, RCN offered to limit this Request to documents that refer to any repeat infringer policy under the DMCA from January 1, 2018, to the present. Despite this compromise, Plaintiffs maintain that this Request is overly broad, and that the Request is not directed to the discovery of "relevant and admissible" information. Exhibit 5 at 2. Whether information is "admissible," however, is not determinative of whether the documents are *discoverable* under Rule 26. *See* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

The requested information is directly relevant to Plaintiff's contention that RCN does not qualify for the safe harbor defense. Disconnecting or terminating repeat infringers in "appropriate circumstances" is a requirement for an ISP to be entitled to a safe harbor defense. 17 U.S.C. § 512(i)(1)(A). Information within Plaintiffs' possession, custody, or control regarding repeat infringer policies during the relevant time period may provide information relating to the parameters of what Plaintiffs believe to be a sufficient DMCA policy. Plaintiffs have sought extensive discovery from RCN regarding *RCN*'s internal discussions of the safe harbor; RCN is merely doing the same. If RCN's consideration of what the safe harbor requires is relevant to this case, then Plaintiffs' consideration of the same topic is equally relevant.

---

[1] Copyright complaints are the emails accusing individual internet users of copyright infringement. Plaintiffs contend that RCN had knowledge of the infringement at issue in this case because it received copyright complaints about the works in suit.

Hon. Tonianne J. Bongiovanni
February 12, 2024
Page 4

### RFP No. 11

This Request seeks agreements between Plaintiff and any third-party (for example, an ISP or website owner) relating to circumstances in which a subscriber or user should be terminated in response to an allegation of copyright infringement. Exhibit 1 at 11-12. These agreements are directly relevant to Plaintiffs' contention that any RCN subscriber who is the subject of two copyright complaints should have their internet service permanently terminated.

As stated in Plaintiffs' January 4, 2024 Letter, Plaintiffs have effectively refused to produce any responsive documents. Again, disconnecting or terminating repeat infringers is relevant to whether an ISP is entitled to a safe harbor defense. RCN fully expects Plaintiffs to offer testimony and other evidence at trial to support the notion that RCN should have terminated subscribers upon receipt of two copyright infringement complaints, and the requested agreements between Plaintiffs and third parties may undermine that evidence. Plaintiffs do not dispute that responsive documents exist; they just refuse to produce them.

### RFP No. 12

This Request seeks agreements between any Plaintiff and any ISP that refer to copyright infringement or the DMCA. Exhibit 1 at 12. These documents are relevant and discoverable for the same reasons set forth above with respect to Requests 6 and 11. Plaintiffs do not dispute that they have responsive documents in their possession, custody, or control.

### RFP No. 24

This Request seeks communications (excluding copyright complaints) with any ISP other than RCN regarding a DMCA safe harbor. Exhibit 1 at 17-18. These documents are relevant and discoverable for the reasons discussed above. During the parties' meet-and-confer, RCN explained that RCN is not seeking communications between Plaintiffs' counsel and outside legal counsel for an ISP regarding pending litigation. Instead, RCN is seeking communications between Plaintiffs (or Plaintiffs' counsel or representatives) and ISPs regarding the DMCA. Plaintiffs responded that Plaintiffs will produce communications only with affiliates of RCN. This self-serving narrowing of this Request is not justified, and Plaintiffs have no basis for limiting its production to communications with RCN's affiliates. RCN respectfully requests that the Court compel the production of all responsive communications with any ISP as requested in Request No. 24.

### Interrogatories Nos. 4 and 10

The Court should overrule Plaintiffs' "multiple interrogatory" objections, which Plaintiffs have invoked to prevent RCN from obtaining fundamental information about Plaintiffs' claims.

RCN's Interrogatory No. 4 is directed to a basic aspect of Plaintiffs' infringement allegations. It asks Plaintiffs to identify, by Bates number and on a work-by-work basis, all copyright complaints sent to RCN regarding the Works in Suit. Exhibit 2 at 10. Plaintiffs are

Hon. Tonianne J. Bongiovanni
February 12, 2024
Page 5

relying on these complaints to show that RCN had knowledge of the infringement for which Plaintiffs contend RCN is secondarily liable.

After meeting and conferring regarding Plaintiffs' response, Plaintiffs served a Supplemental Response providing the requested information. Exhibit 6. In its Supplemental Response, however, Plaintiffs lodged a new objection that this simple Interrogatory counts as "multiple interrogatories since each underlying sub-part calls for a response on, separate, discrete matters, namely movies, that are not logically connected, or factually subsumed within a primary question." *Id.* at 2. Plaintiffs then counted Interrogatory No. 4 as **50** separate Interrogatories.

Plaintiffs' multiple interrogatory objection is without merit. "Multiple courts have determined that an interrogatory regarding a particular category constitutes 1 interrogatory, even though the category may contain multiple items." *Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, No. 3:12-cv-00787-FLW-LHG, 2017 WL 2371834, *5 (D.N.J. Feb. 10, 2017), report and recommendation adopted, 2017 WL 2367051 (D.N.J. May 31, 2017). There are 25 Plaintiffs in this case, asserting claims against RCN regarding 50 copyrighted works. RCN's Interrogatory No. 4 is a simple, straightforward Interrogatory asking Plaintiffs to identify specific evidence Plaintiffs intend to rely on to prove their claims. If the Court accepts Plaintiffs' position, that would mean RCN is foreclosed from serving interrogatories about all the Works in Suit or even all of the Plaintiffs. As the court recognized in *Engage Healthcare*, that result would be untenable. *Id.* at *6 ("To rule otherwise would preclude either party from issuing even 1 interrogatory for each disputed mark—an illogical result that would not be consonant with the purpose of Rule 33 or the pragmatic component of the related question approach.").

Interrogatory No. 10 asks Plaintiffs to identify each RCN subscriber whose internet access Plaintiffs contend RCN should have terminated, and when, for RCN to qualify for the DMCA safe harbor. Exhibit 2 at 21. After meeting and conferring, Plaintiffs still refused to provide an answer, and now object that this Interrogatory exceeds the 25-interrogatory limit "by thousands."

Plaintiffs' "multiple interrogatory" objection to Interrogatory No. 10 is baseless. As with their objection to Interrogatory No. 4, Plaintiffs seek to prevent RCN from discovering basic information about Plaintiffs' case. Plaintiffs have alleged thousands of instances of purported copyright infringement by RCN's customers by identifying IP addresses that allegedly downloaded or uploaded copies of the Works in Suit. Plaintiffs allege that RCN is secondarily liable for copyright infringement, and not eligible for the DMCA safe harbor, because RCN did not terminate the internet access of all subscribers accused of infringement. Against this backdrop, Plaintiffs' refusal to identify which subscribers RCN should have terminated is improper and would prevent either party from serving effective interrogatories in this case. *See Engage Healthcare*, 2017 WL 2371834, at *5-6.

Additionally, to the extent Plaintiffs assert that they do not have sufficient information to answer Interrogatory No. 10, this is incorrect. As an initial matter, Plaintiffs expressly allege that RCN "failed to terminate" certain subscribers accused of copyright infringement (*see, e.g.*, Dkt. 78, ¶¶ 151, 181, 184-89), so Plaintiffs cannot credibly claim they need discovery to answer this interrogatory. Plaintiffs also have the contents of RCN's DMCA system for processing copyright infringement complaints, which identifies IP addresses and corresponding subscriber account

Hon. Tonianne J. Bongiovanni
February 12, 2024
Page 6

numbers for which RCN received a copyright complaint in the relevant time period. Based on this information alone, Plaintiffs should be able to answer this Interrogatory. The fact that additional discovery may cause Plaintiffs to supplement their answer is no basis for an outright refusal to answer the Interrogatory now.

For these reasons, RCN respectfully requests that the Court overrule Plaintiffs' multi-part interrogatory objection as to Interrogatory Nos. 4 and 10, and compel Plaintiffs to respond to Interrogatory No. 10.

Respectfully,

Edward F. Behm